**Eric L. BAUMGART, Appellant**

v.

**The STATE of Texas**

NOS. PD–1358–15, PD–1359–15, PD–1360–15, PD–1361–15

Court of Criminal Appeals of Texas.

Delivered: March 1, 2017

Dan McCrory, Assistant District Attorney, Houston, TX, Stacey Soule, Austin, TX, for the State.

Michael D. Gillespie, Channelview, TX, for appellant.

Keller, P.J., delivered the opinion of the Court in which Hervey, Alcala, Richardson, Yeary, Keel and Walker, JJ., joined.

Under the Private Security Act, people or entities that engage in certain private security businesses must have a license. Engaging in such a business without a license is a criminal offense. A subchapter of the Private Security Act contains a number of provisions that say the Act "does not apply to" certain classes of people, such as law enforcement personnel. We must determine whether these non-applicability provisions are exceptions that must be negated by the State in its charging instrument or are defenses that must initially be raised by the defendant.

## I. BACKGROUND

Appellant acted as a security guard but had no license for doing so. He was charged with committing violations of the Private Security Act, in the Occupations Code. Each indictment alleged that appellant committed an offense by "act[ing] as a guard company, by engaging in the business of a guard on a contractual basis for another person ... to prevent, observe, or detect unauthorized activity on private property without holding a license as a security services contractor."[1] Appellant filed motions to quash and to dismiss these indictments. One of his allegations was that each of the indictments failed to contain language negating statutory exceptions to the offense. The primary exception that appellant relied upon was that he was a law enforcement officer, but there are a dozen statutory provisions that he claimed created exceptions that the State was required to negate in the indictment. The trial court denied appellant's motions, and appellant was subsequently convicted.

On appeal, appellant again raised his claim that the indictments failed to negate applicable statutory exceptions. Relying indirectly on *American Plant Food Corp. v. State*,[2] the court of appeals held that an exception did not have to be pled in the charging instrument if (1) the exception was contained in a separate section from the provision stating the offense and (2) a

---

1. The indictments alleged different dates for the commission of the offense. One of the indictments alleged a different person for whom appellant worked. The court of appeals sustained appellant's sufficiency-of-the-evidence complaint as to the conviction on that indictment and that cause number is not before us.

2. 508 S.W.2d 598 (Tex. Crim. App. 1974).

*prima facie* case could be made without proof negating the exception.[3] The court of appeals focused on the law enforcement provision and stated that the exception was contained within a separate section from the section that stated the offense and, in fact, was contained within a separate subchapter titled "Exceptions."[4] Further, the court concluded that a *prima facie* case of acting as a security services contractor without a license could be made without proof that negated the law enforcement exception. Consequently, the court of appeals rejected appellant's contention, and it ultimately affirmed his conviction.[5]

Appellant now argues that *American Plant Food* relied on the common law rule for when a statutory exception to an offense had to be negated in the State's pleading.[6] He contends that this common law rule was superseded by the enactment of Texas Penal Code § 2.02, which provides:

> (a) An exception to an offense in this code is so labeled by the phrase: "It is an exception to the application of . . . ."

> (b) The prosecuting attorney must negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's

conduct does not fall within the exception.

> (c) This section does not affect exceptions applicable to offenses enacted prior to the effective date of this code.[7]

If it were otherwise, he argues, then the provisions of Texas Penal Code § 46.15—providing that certain offenses for unlawfully carrying weapons do not apply to certain classes of people or in certain situations—would be mere defenses to prosecution rather than exceptions to criminal liability, and he contends that the legislature did not intend such a result. Appellant argues that the court of appeals's construction is problematic because it blurs the line between exceptions (which have to be negated in the charging instrument) and defenses (which must be raised by defensive evidence at trial). He contends that "[a]n exception to the law excludes a person from criminal liability under special circumstances, while a defense is an excuse to relieve a person of liability for violating a law."

The State contends that § 2.02 merely codified the common law. Alternatively, the State argues that, because § 2.02 explicitly requires that an exception be denoted by the language, "It is an exception to the application of . . . ," the provisions found in the "Exceptions" subchapter of the Private Security Act (which do not use

---

3. *Baumgart v. State*, —— S.W.3d ——, ——, Nos. 14–14–00306–CR, 14–14–00307–CR, 14–14–00308–CR, 14–14–00309–CR, 14–14–00310–CR, 2015 WL 3986153, *2–3, 2015 Tex.App. LEXIS 6665, *6 (Tex. App.–Houston [14th Dist.] June 30, 2015) (citing *McClain v. State*, 14–97–00355–CR, 1997 Tex.App. LEXIS 3085, 1997 WL 312309, at *1–2 (Tex. App.–Houston [14th Dist.] June 12, 1997, pet. ref'd) (not designated for publication) (citing *American Plant Food Corp.* )).

4. *Id.* at ——, 2015 WL 3986153, at *2–3, 2015 Tex.App. LEXIS 6665, at *6–7.

5. *Id.* at ——, 2015 WL 3986153, at *3, 2015 Tex. App. LEXIS 6665, at *7.

6. Appellant's opening brief asserted that *American Plant Food*, decided shortly after § 2.02 became effective, was simply wrong. In his reply brief, however, he acknowledges that the decision would have decided a criminal case arising before the enactment of § 2.02 and "at best was affirming common law doctrine that existed prior to Section 2.02."

7. *See* Tex. Penal Code § 2.02 (ellipsis in original).

that phrase) do not constitute "exceptions." Relying upon dictionary definitions, appellant responds that the word "exception" is defined to mean a situation where a rule does not apply, and he contends that the literal wording of the provisions found in the "Exceptions" subchapter of the Private Security Act satisfied this definition by providing: "... this chapter does not apply to ...."

## II. ANALYSIS

### A. Statutory Construction Principles

 To determine the meaning of § 2.02, along with the relevant provisions of the Private Security Act, we employ the relevant principles of statutory construction.[8] A statute must be construed in accordance with the plain meaning of its text unless the language of the statute is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended.[9] If the text of a statute is ambiguous, or the plain meaning leads to such absurd results, then we can consult extratextual factors, including: (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) common law or former statutory provisions, including laws on the same or similar subjects, (5) the consequences of a particular construction, (6) administrative construction of the statute, and (7) the title (caption), preamble, and emergency provision.[10] Although relevant as an extratextual factor in construing the text of a statute when consideration of such factors are allowed, "[t]he heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute." [11] We also take into account any prior caselaw construing a statute.[12]

### B. Common Law

Because the parties dispute whether § 2.02 codifies the common law, we find it helpful to first address the common law rule regarding exceptions. The court of appeals accurately described the rule recited in *American Plant Food*: When the statutory exception "is in a separate section from the provision which states the offense, and a *prima facie* case can be made without proof negating the exception," then the exception need not be negated in the charging instrument.[13] In support of this rule, *American Plant Food* cited *Salazar*, *McKnight*, and *Baker*,[14] which we will discuss below.[15] Although *American Plant Food* was handed down after the enactment of § 2.02 in 1974, the offense at issue occurred before 1974,[16] and we did not cite or discuss § 2.02,[17] so the case was decided on the basis of com-

---

8. *See Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014).

9. *Id.* (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

10. *Id.*; Tex. Gov't Code § 311.023.

11. Tex. Gov't Code § 311.024; *Ex parte Crouch*, 838 S.W.2d 252, 254–55 (Tex. Crim. App. 1992).

12. *Williams v. State*, 273 S.W.3d 200, 215 (Tex. Crim. App. 2008).

13. *American Plant Food*, 508 S.W.2d at 604–05.

14. *See id.* at 605.

15. *See infra,* this section.

16. *See* 508 S.W.2d at 600–01 (Statute the defendant claimed was controlling had been expressly repealed and repealed by implication before 1974.).

17. *See id.* at 604–05.

mon law, and the rule articulated in that case was the common-law rule.

This rule had its origins in caselaw stretching at least as far back as 1878, to the decision of our predecessor court, the Court of Appeals, in *Blasdell v. State*.[18] The statute at issue in that case was Chapter 140 of the General Laws of Texas.[19] Section one of the statute stated that "no person shall be permitted to practice medicine ... without first having a certificate of qualification ...."[20] Section five of the statute provided that a person "violating any of the provisions of this act" would be guilty of a misdemeanor and punished with a fine.[21] Later text in section five contained two provisos that exempted certain persons from the requirements of the statute.[22] The court held that the provisos were defenses that did not need to be negated in the State's pleading.[23] In support of this holding, the court stated the rule to be that an exception found in a subsequent clause of the statute from the clause containing the offense, or found in the same clause but not incorporated with the enacting clause by words of reference, was treated as a matter of defense only, and need not be negated in the State's pleading.[24] In *Baker v. State*, this Court cited *Blasdell* with approval but added that an exception would also need to be negated in the State's pleading if, "no matter where its [the exception's] location in the statute, ... the thing forbidden by the particular statute under consideration could not be proved, or the case could not be made out without proof of the so-called exception or omission."[25]

In *McKnight v. State*, we concluded that exceptions to the Dental Practice Act did not need to be negated in the charging instrument.[26] Separate articles contained the prohibition against practicing dentistry without a license (Art. 747), the relevant definition of practicing dentistry (Art. 754a), the exceptions to the statutory scheme (Art. 753), and the criminal punishment prescribed for violations of the statutory scheme (Art. 754).[27] In *Salazar v. State*, we held that the State was not required to negate exceptions to a statute prohibiting the possession of firearms.[28] Section one of the statute provided that it would be "unlawful for any person convicted of a felony ... to have in his possession ... any pistol, revolver or other firearm

---

18. 5 Tex.App. 263, 269–70 (1878).

19. *See id.* at 266; Tex. Gen. Laws 1876, p. 231.

20. Tex. Gen. Laws 1876, Ch. 140, § 1, p. 231.

21. *Id.* § 5, p. 232.

22. *Id.* ("*provided*, that nothing in this act shall be so construed as to exclude or disqualify any person who may have been already qualified for the practice of medicine under the act of May 16, 1873; *provided*, that nothing in this act shall be construed as to apply to those who have been regularly engaged in the general practice of medicine in this State, in any of its branches or departments, for a period of five consecutive years in this State prior to the first day of January, 1875; nor to those who have obtained certificates of qualification under said act; nor to females who follow the

practice of midwifery, strictly as such") (emphasis in original).

23. *Blasdell*, 5 Tex.App. at 269.

24. *Id.*

25. 132 Tex.Crim. 527, 531–32, 534, 106 S.W.2d 308, 310–12 (1937).

26. 161 Tex.Crim. 472, 477–78, 278 S.W.2d 150, 153 (1955) (op. on State's mot. for reh'g).

27. *See* Tex. Penal Code arts. 747 ("It shall be unlawful for" any person to practice dentistry without a license), 753, 754, 754a (Main Volume 1948).

28. 423 S.W.2d 297, 299 (Tex. Crim. App. 1968).

capable of being concealed upon the person." [29] Section two of the statute imposed criminal punishment,[30] and section four stated that "[t]he penal provisions of this Act shall not apply to" police officers, guards, and individuals who have not been convicted of an offense for five years following discharge or release from prison.[31]

Appellant does not now contend that he would prevail if the common law governed his case, but he did argue that to the court of appeals. He claimed that the statute that proscribed the offense, Occupations Code § 1702.388, essentially incorporates the entirety of the Private Security Act so as to include the "Exceptions" subchapter as elements of the offense. Although § 1702.388 contains broad language, "A person commits an offense if the person violates a provision of this chapter for which a specific criminal penalty is not prescribed," [32] the structure of the scheme

imposed by the Private Security Act does not materially differ from the statutory schemes addressed in this Court's prior common law jurisprudence, where the exemptions from criminal liability were held to be defenses. The Private Security Act contains multiple provisions proscribing criminal offenses, with § 1702.388 simply being a catch-all for violations of the Act not punished elsewhere.[33] As with schemes addressed in other cases, the Private Security Act in this and some other instances contains separate sections addressing (1) the required or prohibited conduct,[34] (2) the criminal punishment imposed,[35] and (3) exemptions from the statute's application.[36] And in *Blasdell*, the statute imposed criminal punishment only if a person "violated" its provisions, but the provisos saying that the statute did not apply were nevertheless construed as defenses rather than as part of the State's case. Appellant's claim would fail under the common law.

---

29. *See* Tex. Penal Code art. 489c, § 1 (Supp. 1950).

30. *See id.* § 2.

31. *See id.* § 4.

32. Tex. Occ. Code § 1702.388(a).

33. *See id.* §§ 1702.384 (offense for falsifying fingerprints or photographs submitted under § 1702.110), 1702.3841 (insufficient insurance coverage in violation of § 1702.124), 1702.386, 1702.3863, 1702.3867, 1702.387 (failure to surrender documents as required under § 1702.364), 1702.3875.

34. *See e.g.*, Tex. Occ. Code §§ 1702.102 ("guard company" must have a license), 1702.108 (defining "guard company"). *See also supra* at n.33.

35. *See* Tex. Occ. Code § 1702.388(a) (making it an offense if a specific criminal penalty is not prescribed), (b) (prescribing level of punishment). *See also supra* at n.33.

36. *See* Tex. Occ. Code §§ 1702.321–1702.332. And as we shall see below, the Occupations Code was a recodification of prior law with no substantive change intended. *See infra* at nn.53–54. Under the prior statute, the license provision expressly labeled the prohibited conduct "unlawful" and referred to the punishment section, making it even clearer that the two statutes, read together, created a punishable offense. *See* Tex. Rev. Civ. Stat. art. 4413(29bb), §§ 13(a) ("It shall be unlawful and punishable as provided in Section 44 of this Act for any person to engage in the business of … [a] guard company … unless he has obtained a license under the provisions of this Act.", 44(c) ("Any person who violates any provision of this Act for which a specific criminal penalty is not prescribed commits an offense. An offense under this subsection is a Class A misdemeanor, except ….") (LEXIS 1998). A "Revisor's Note" indicates that this was changed because § 13's reference to § 44 was "unnecessary" and that § 1702.388 "provides general penalties for any violation of this chapter." Tex. Occ. Code Ann. §§ 1702.101, p. 166 (Revisor's Note),

## C. Penal Code

### 1. *Caselaw Statements about § 2.02 and Common Law*

■ The question then becomes, does Penal Code § 2.02 codify (or incorporate) the common law? In *Threlkeld v. State*, we said that, prior to the enactment of the Controlled Substances Act, the rule for exceptions was that, "where a penal statute embraces an exception which is part of the statute itself, or the exception appears within the enacting clause of the law, it is necessary for the State to negate such an exception in the indictment." [37] We then stated that § 2.02(b) "codified this common law rule." [38] But this statement was not necessary to the resolution of the case because we then said that the rule did not apply to the Controlled Substances Act, due to a specific provision that expressly removed the burden of negating exceptions in the charging instrument in a controlled substances prosecution. [39] Consequently, any statement in *Threlkeld* about whether § 2.02 codified the common law was *dicta* and is not binding authority. [40] In *McElroy v. State*, a plurality of the Court, referring to *Threlkeld*'s statement of the common law rule, said that § 2.02(b) "simply codi-

fied the above earlier common law rule." [41] But plurality opinions are not binding authority. [42]

Moreover, in *Martinez v. State*, we criticized a court of appeals for relying upon common law instead of applying § 2.02. [43] And the language of § 2.02(c), stating that "[t]his section does not affect exceptions applicable to offenses enacted prior to the effective date of this code," [44] suggests that § 2.02 does in fact change the law and that the law before the enactment of § 2.02 was maintained for at least some statutes that preceded the enactment of § 2.02.

### 2. *§ 2.02 and Offenses Outside the Penal Code*

Penal Code § 1.03(b) states, in relevant part, "The provisions of Titles 1, 2, and 3 apply to offenses defined by other laws, unless the statute defining the offense provides otherwise." [45] Title 1 of the Penal Code includes § 2.02 (as well as § 2.03, the significance of which we will discuss later). [46] We have held that § 2.02 was not applicable to the Alcoholic Beverage Code—but only because a statute in that Code explicitly provided that exceptions

---

1702.102, p. 170 (Revisor's Note (1)) (Vernon's 2012).

**37.** 558 S.W.2d 472, 473 (Tex. Crim. App. 1977).

**38.** *Id.*

**39.** *Id.*

**40.** *See Wilson v. State*, 448 S.W.3d 418, 422 (Tex. Crim. App. 2014) (Court's statement that "repeated" meant "close enough proximity to properly be termed a single episode" was *dicta* because it was not necessary to the reasoning or holding of the case and therefore was not controlling).

**41.** 720 S.W.2d 490, 493 (Tex. Crim. App. 1986) (plurality op.).

**42.** *Blea v. State*, 483 S.W.3d 29, 34 (Tex. Crim. App. 2016).

**43.** 879 S.W.2d 54, 55 n.4 (Tex. Crim. App. 1994) (saying that "the court's reliance on the common law is misplaced" and referring to § 2.02(b)).

**44.** Tex. Penal Code § 2.02(c).

**45.** Tex. Penal Code § 1.03(b). *See also Chase*, 448 S.W.3d at 13 ("The most obvious effect of this provision [§ 1.03(b)] is that, unless otherwise provided by statute, provisions contained in Titles 1, 2, and 3 of the Penal Code apply to offenses contained in statutes that are outside the Penal Code.").

**46.** *See* Tex. Penal Code, Title 1, Ch. 2.

would be treated as defenses.[47] In *Martinez*, when we stated that § 2.02, rather than the common law, applied, we were discussing offenses outside the Penal Code.[48] And the carve-out in § 2.02(c) for offenses that pre-date the Penal Code seems to be an acknowledgment that § 2.02 will, at least sometimes, apply outside the Penal Code.[49]

We note that nothing in the Private Security Act prevents the application of § 2.02.[50] The question remains whether the application of § 2.02 to the Private Security Act is prevented by anything within § 2.02 itself.

### 3. *Prior Law Carve–Out in § 2.02(c)*

As we have earlier explained, under § 2.02(c), at least some statutes that were enacted prior to § 2.02 are exempted from § 2.02.[51] For those statutes, then, the common law rule would continue to govern. The applicable effective date is January 1, 1974, when the 1974 Penal Code was adopted.[52] Whether all or part of the Private Security Act falls within § 2.02(c)'s carve-out might itself be a serious, unre-

solved question of statutory construction. The Occupations Code was adopted in 1999,[53] but it was a recodification of prior law and no substantive change was intended.[54] The Private Security Act has existed in some form since 1969, but amendments after 1974 have occurred, creating some new provisions and altering other provisions, including the law-enforcement exception.[55] We need not decide, at this juncture, how the Private Security Act should be viewed with respect to § 2.02(c) because we have already determined that appellant's claims would fail if the common law were found to control, and, as we shall see below, we reject appellant's claims under § 2.02.

### 4. *Penal Code §§ 2.02(a) and 2.03(e)*

■ As we have set out earlier, Penal Code § 2.02(a) provides, "An exception to an offense in this code is so labeled by the phrase: 'It is an exception to the application of . . . .' "[56] In some contexts, we have suggested that "magic words" are not required[57] or that "substantial compliance"

---

**47.** *Dunavin v. State*, 611 S.W.2d 91, 101 (Tex. Crim. App. 1981) ("It is by reason of this provision, coupled with operation of the 'unless' clause of § 1.03(b), *supra*, that § 2.02, *supra*, does not govern the manner of alleging and proving an offense proscribed by the Code.").

**48.** 879 S.W.2d at 55 n.4 ("The Texas Penal Code, and not the common law, applies to offenses defined by other statutes, unless the statute defining the offense provides otherwise. . . . Under the Texas Penal Code, the charging instrument must negate the existence of an exception in the charging instrument.") (citing §§ 1.03(b) and 2.02(b)).

**49.** *See* TEX. PENAL CODE § 2.02(c).

**50.** *See* TEX. OCC. CODE, Ch. 1702, *passim*.

**51.** *See* TEX. PENAL CODE § 2.02(c).

**52.** *See* Acts 1973, 63rd Leg., ch. 399, §§ 1, 4.

**53.** *See* Acts 1999, 76th Leg., ch. 388, §§ 1, 8.

**54.** *Id.* § 7.

**55.** *See* TEX. REV. CIV. STAT. ANN. art. 4413(29bb), § 3, p.191–92 (Vernon's 1976) ("Exceptions"); *id.* at § 44, p. 210 ("Penal provisions"); *id.* at p. 211 (prior history citations), 213–14 (historical notes) (discussing original wording of § 3 and amendments through 1975), 219 (historical notes) (discussing 1975 amendment to § 44). *See also* e.g. TEX. OCC. CODE ANN. §§ 1702.102, p. 170; 1702.321, p. 280–81; 1702.322, p. 282–83; 1702.388, p. 325–26 (prior history citations, historical and statutory notes) (Vernon's 2012).

**56.** TEX. PENAL CODE § 2.02(a) (ellipsis in original).

**57.** *See e.g., Harkcom v. State*, 484 S.W.3d 432, 434 (Tex. Crim. App. 2016) (wording of notice of appeal); *Bryant v. State*, 391 S.W.3d 86, 91 (Tex. Crim. App. 2012).

is sufficient.[58] But there are times when the legislature has mandated strict compliance with a statutory provision.[59] This is one of those times. In saying that an exception is "labeled" with a particular phrase, and in placing that particular phrase in quotation marks, the legislature has decreed that an exception exists only when that exact phrase is used. Even the ellipsis within the quoted phrase contributes to the idea that, though the content of exceptions may vary, they are always introduced with the same phrase.

■ Any ambiguity that might otherwise exist in that regard is eliminated by § 2.03(e), which provides, "Any ground of defense in a penal law that is not plainly labeled in accordance with this chapter has the procedural and evidentiary consequences of a defense." [60] Although this provision is found in § 2.03, titled "Defense," rather than § 2.02, the reference to "this chapter" makes clear that § 2.03(e)'s "plain labeling" requirement refers not only to § 2.03 but also to the rest of Chapter 2, which includes § 2.02(a) for exceptions, as well as § 2.04(a), prescribing the form for affirmative defenses.[61] The legislature essentially took a middle ground regarding the default position for

defensive matters: If a defensive matter is not plainly labeled as an exception, defense, or an affirmative defense, then it is a defense. So, if a defensive matter does not use the exact wording outlined in § 2.02(a) (or the exact wording outlined in § 2.04(a)), then it is not an exception (or affirmative defense) but is a defense that is governed by § 2.03, and defenses do not have to be negated in the charging instrument.[62]

This conclusion is consistent with our cases that have refused to recognize implied exceptions. In *Bermudez v. State*, we held the voluntary conduct requirement in Penal Code § 6.01 was not an exception because it was not "so labeled" in accordance with § 2.02.[63] And in *Smith v. State*, we held that the former version of the "safe place" punishment mitigator in the aggravated kidnapping statute was not an exception, despite being part of an "unless" clause in the statute.[64]

Consistent with appellant's arguments, this construction of §§ 2.02(a) and 2.03(e) means that the weapons-offense exemptions in § 46.15—employing the language "do[es] not apply"—are defenses rather than exceptions. But we have indicated as much,[65] and that is exactly what several

---

**58.** *See e.g., VanNortrick v. State*, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007) (admonishments under TEX. CODE CRIM. PROC. art. 26.13); *Bahm v. State*, 219 S.W.3d 391, 393 (Tex. Crim. App. 2007) (unsworn declaration of inmate under TEX. CIV. PRAC. & REM. CODE § 132.003); *Bible v. State*, 162 S.W.3d 234, 240 (Tex. Crim. App. 2005) (fully effective equivalent of warnings under Article 38.22).

**59.** *See Nguyen v. State*, 292 S.W.3d 671, 675 (Tex. Crim. App. 2009) (Article 38.22, § 3(a)).

**60.** TEX. PENAL CODE § 2.03(e).

**61.** *See id.* § 2.04(a) ("An affirmative defense in this code is so labeled by the phrase: "It is an affirmative defense to prosecution ....").

**62.** *See id.* § 2.03(b).

**63.** 533 S.W.3d 806, 807 (Tex. Crim. App. 1976).

**64.** 541 S.W.2d 831, 838 (Tex. Crim. App. 1976) (on State's mot. for reh'g). *See also Williams v. State*, 851 S.W.2d 282, (Tex. Crim. App. 1993) (taking guidance from § 2.03(c) to treat the "safe place" issue like a defense, but at the punishment stage of trial); § 20.04(b) (West 1992) ("An offense under this section is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place, in which event it is a felony of the second degree.").

**65.** *Johnson v. State*, 571 S.W.2d 170, 172 (Tex. Crim. App. 1978) (characterizing the "traveling" exception to weapons offenses as "a defense to prosecution" and citing § 2.03(e)).

courts of appeals have held.[66] Moreover, other court-of-appeals cases have construed similar Penal Code provisions containing "does not apply" language as creating defenses under § 2.03(e).[67] Further, numerous provisions in the Penal Code use the exact phrasing of § 2.02(a) to create exceptions.[68] The legislature has shown

66. *In the Matter of A.G.*, 292 S.W.3d 755, 759 (Tex. App.–Eastland 2009, no pet.) (§ 46.15 exemption that says weapons offense "does not apply" to a person who is traveling is a defense under § 2.03(e)); *Illingworth v. State*, 156 S.W.3d 662, 664 (Tex. App.–Forth Worth 2005, no pet.) (same); *Hafley v. State*, 781 S.W.2d 642, 646 (Tex. App.–Dallas 1989, no pet.) (predecessor to § 46.15, saying that provisions of weapons-offense statute "do not apply" in certain circumstances is not an exception but a defense under § 2.03(e)); *Ayesh v. State*, 734 S.W.2d 106, 107 (Tex. App.–Austin 1987, no pet.) (same). *See also Tafel v. State*, — S.W.3d —, —, Nos. 10–14–00019–CR, 10–14–00020–CR, 2016 WL 4573106, *1–2, 2016 Tex. App. LEXIS 9703, *2–3 (Tex. App.–Waco August 31, 2016, pet. filed) (exception under concealed handgun statute, Penal Code § 46.035, using language "do not apply," codifies a defense under § 2.03(e), not an exception under § 2.02(a)). *But see id.* at —, 2016 WL 4573106, *, 2016 Tex. App. LEXIS 9703, *40–53 (Gray, C.J., dissenting) (arguing that the statute codifies an exception, not a defense).

67. *Smith v. State*, 959 S.W.2d 1, 22 n.35 (Tex. App.–Waco 1997, pet. ref'd) (exemptions under Penal Code § 36.10 to offenses involving gifts to public servants); *Borkowicz v. State*, 802 S.W.2d 115, 116–17 (Tex. App.–Texarkana 1990, no pet.) (exemptions under Penal Code § 43.23, obscenity offense); *Johnson v. State*, 760 S.W.2d 797, 798–99 (Tex. App.–Dallas 1988, no pet.) (same).

68. *See* TEX. PENAL CODE §§ 22.041(h) ("It is an exception to the application of this section that the actor voluntarily delivered the child to a designated emergency infant care provider under Section 262.302, Family Code."), 25.08(b) ("It is an exception to the application of this section that the thing of value is" one of four things listed in the statute relating to adoption or care of a child), 28.02(b) ("It is an exception to the application of Subsection (a)(1) that the fire or explosion was a part of the controlled burning of open-space land."), 30.06(e) ("It is an exception to the application of this section that the property on which the license holder carries a handgun is owned or leased by a governmental entity and is not a premises or other place on which the license holder is prohibited from carrying the handgun under Section 46.03 or 46.035."), 30.07(e) (nearly identical provision), 36.02(d) ("It is an exception to the application of Subdivisions (1), (2), and (3) of Subsection (a) that the benefit is a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305, Government Code."), 36.03(c) ("It is an exception to the application of Subsection (a)(1) of this section that the person who influences or attempts to influence the public servant is a member of the governing body of a governmental entity, and that the action that influences or attempts to influence the public servant is an official action taken by the member of the governing body."), 37.10(b) ("It is an exception to the application of Subsection (a)(3) that the governmental record is destroyed pursuant to legal authorization or transferred under Section 441.204, Government Code."), 38.16(b) ("It is an exception to the application of this section that the actor evaded service of process by avoiding detection."), 42.09 (f) ("It is an exception to the application of this section that the conduct engaged in by the actor is a generally accepted and otherwise lawful" activity regarding fishing, hunting, trapping, wildlife management and certain other enumerated activities relating to animals), 42.092(f) (same), 42.105 ("It is an exception to the application of Subsection (b)(6) that the actor is 15 years of age or younger at the time of the offense."), 42.11(c) ("It is an exception to the application of this section that the act that would otherwise constitute an offense is done in conformity with statutes of the United States or of this state relating to the proper disposal of damaged flags."), 46.03(i) ("It is an exception to the application of Subsection (a)(6) that the actor possessed a firearm or club: (1) while in a vehicle being driven on a public road; or (2) at the actor's residence or place of employment."), 46.035(a) ("It is an exception to the application of this subsection that the handgun was partially or wholly visible but was carried in a shoulder or belt holster by the license holder."), 47.05(b) ("It is an exception to the application of Subsec-

that it knows how to create exceptions in the Penal Code that conform exactly to the labeling requirement in § 2.02(a).

■ The next question is, does this construction of §§ 2.02(a) and 2.03(e) extend to defensive matters outside the Penal Code? It is true that § 2.02(a) contains the qualifying language "in this code." [69] Without more, we might conclude that the labeling requirement for exceptions applies only to defensive matters in the Penal Code. But § 2.03(e) contains broader language: Any ground of defense "in a penal law" must conform to the requirements of Chapter 2.[70] If the legislature had meant to limit § 2.03(e) to the Penal Code, it could have used the language "in this code" instead.[71] And as we have previously explained, the requirement that the plain labeling be "in accordance with this chapter" means that § 2.03(e) requires a matter to be treated as a defense if it does not conform to the Penal Code requirements for creating an exception (§ 2.02(a)) or an affirmative defense (§ 2.04(a)).

We have once applied § 2.03(e) to hold that a defensive matter in an Election Code provision was "a mere defense." [72] A court of appeals has applied § 2.03(e) to an exemption in a nepotism statute.[73] And numerous provisions outside the Penal Code contain the exact language required by § 2.02(a).[74] This plethora of provisions

---

tion (a) that the information communicated is intended for use in placing a lawful wager under Article 11, Texas Racing Act (Article 179e, Vernon's Texas Civil Statutes), and is not communicated in violation of Section 14.01 of that Act."), 48.01(d) ("It is an exception to the application of Subsection (a–1) if the person is in possession of the burning tobacco product, smokes tobacco, or operates the e-cigarette exclusively within an area designated for smoking tobacco or operating an e-cigarette or as a participant in an authorized theatrical performance."), 48.02(c) ("It is an exception to the application of this section that the valuable consideration is" one of three enumerated activities relating to the receipt of human organs), 49.031(c) ("It is an exception to the application of Subsection (b) that at the time of the offense the defendant was a passenger in: (1) the passenger area of a motor vehicle designed, maintained, or used primarily for the transportation of persons for compensation, including a bus, taxicab, or limousine; or (2) the living quarters of a motorized house coach or motorized house trailer, including a self-contained camper, a motor home, or a recreational vehicle.").

69. *Id.* § 2.02(a).

70. *Id.* § 2.03(e).

71. The Practice Commentary to § 2.03 states that "Subsection (e) applies to penal laws outside this code—in fact, such will be its chief application because most defenses in this code are so labeled. This application will furnish a rule for the courts when faced with language used in the definition of an offense that could be either an exception or defense; this subsection directs its treatment as a defense." Seth S. Searcy & James R. Patterson, Tex. Penal Code Ann. § 2.03, *Practice Commentary*, p. 61 (Vernon's 1974). *See also Thompson v. State*, 236 S.W.3d 787, 798 (Tex. Crim. App. 2007) (Practice Commentary was drafted by individuals involved in the Penal Code revision project, though the legislature did not always follow the committee's recommendations.).

72. *Beck v. State*, 583 S.W.2d 338, 344 n.3, 348 (Tex. Crim. App. 1979).

73. *Bean v. State*, 691 S.W.2d 773, 775 (Tex. App.–El Paso 1985, pet. ref'd) (nepotism law exemption containing the language, "Provided, that nothing herein . . . .")

74. *See* Tex. Agric. Code § 63.157(f) ("It is an exception to the application of Subsection (b) that the person holds a permit or license issued under 18 U.S.C. Section 843."); *Id.* § 132.082(b) ("It is an exception to the application of this section that: (1) the inedible eggs do not exceed five percent by count of the eggs sold; and (2) the eggs are sold to: (A) a dealer for candling and grading; or (B) a breaking plant for breaking purposes."); Tex. Bus. & Com. Code § 17.824 ("It is an exception to the application of Subsection (b) of Section 17.822 or Section 17.823 of this code that a person describes or labels food as

'kosher-style,' and, if the description is written, the words 'kosher' and 'style' are of the same size type or script."); Tex. Educ. Code § 37.124(d) ("It is an exception to the application of Subsection (a) that, at the time the person engaged in conduct prohibited under that subsection, the person was younger than 12 years of age."); *Id.* § 37.126 (nearly identical provision); Tex. Elec. Code § 61.001(c) ("It is an exception to the application of Subsection (b) that the candidate: (1) is not within plain view or hearing of the persons in the voting area or the area in which voters are being accepted for voting; and (2) is not engaged in campaign activity."); *Id.* § 66.054(b) ("If the officer is an election clerk, it is an exception to the application of Subsection (a)(2) that the election clerk did not receive the returns from the presiding judge in time to permit a timely delivery."); *Id.* § 84.004(b) ("It is an exception to the application of Subsection (a) that the person signed early voting ballot applications for more than one applicant: (1) as an early voting clerk or deputy early voting clerk; or (2) and the person is related to the additional applicants as a parent, grandparent, spouse, child, or sibling."); *Id.* § 254.041(d) ("It is an exception to the application of Subsection (a)(3) that: (1) the information was required to be included in a semiannual report; and (2) the person amended the report within the time prescribed by Section 254.0405(b) or under the circumstances described by Section 254.0405(c)."); *Id.* § 255.007(d) ("It is an exception to the application of Subsection (b) that the political advertising sign was printed or made before September 1, 1997, and complied with Subsection (a) as it existed immediately before that date."); *Id.* § 276.004(b) ("It is an exception to the application of this section that the person's conduct occurs in connection with an election in which the polls are open on election day for voting for two consecutive hours outside of the voter's working hours."); Tex. Fam. Code § 261.302(f) ("It is an exception to the application of this subsection that the department requested the person to be present at the site of the transport."); Tex. Fin. Code § 154.405(b) ("It is an exception to the application of this section that the failure to make a deposit is inadvertent and is corrected before the 11th day after the date the seller discovers the failure."); Tex. Gov't Code § 305.027(b) ("It is an exception to the application of Subsection (a) to a broadcaster, printer, or publisher of legislative advertising or to an agent or employee of the broadcaster, printer, or publisher that" a person is an professional agent rather than a sponsor or the sponsor is given a written notice in compliance with the statute); *Id.* § 403.024(d) ("It is an exception to the application of Section 552.352(a) that the comptroller or an officer or employee of the comptroller's office posted information under this section in reliance on a determination made by a state agency about the confidentiality of information relating to the agency's expenditures."); *Id.* § 497.010(c) ("It is an exception to the application of this section that the article or product sold is" one of two enumerated items), (d) ("It is an exception to the application of this section that the actor was an inmate or state jail defendant confined in a facility operated by or under contract with the department who sold or offered to sell an art or craft in the manner authorized under Section 501.013(b)."); *Id.* § 552.351(c) ("It is an exception to the application of Subsection (a) that the public information was transferred under Section 441.204."); Tex. Health & Safety Code § 161.252(b) ("It is an exception to the application of this section that the individual younger than 18 years of age possessed the cigarette, e-cigarette, or tobacco product in the presence of: (1) an adult parent, a guardian, or a spouse of the individual; or (2) an employer of the individual, if possession or receipt of the e-cigarette or tobacco product is required in the performance of the employee's duties as an employee."), (c) ("It is an exception to the application of this section that the individual younger than 18 years of age is participating in an inspection or test of compliance in accordance with Section 161.088."); *Id.* § 365.035(e) (It is an exception to the application of Subsection (b) that the person possessed the glass container only for the purpose of water sampling or conducting scientific research as authorized by" certain enumerated entities.); *Id.* § 773.064(d) ("It is an exception to the application of Subsection (c) that the person transports a sick or injured person" under certain enumerated circumstances.); Tex. Loc. Gov't Code § 176.013(f) ("It is an exception to the application of Subsection (a) that the local government officer filed the required conflicts disclosure statement not later than the seventh business day after the date the officer received notice from the local governmental entity of the alleged violation."), (g) ("It is an exception to the application of Subsection (b)

outside the Penal Code that conform exactly to the language required by § 2.02(a) demonstrates the legislature's understanding that § 2.02(a) would apply outside the Penal Code.

And there is at least one good reason why the legislature would want to be parsimonious when it comes to construing whether a defensive provision constitutes an exception. Some statutory schemes may be littered with dozens of provisions that exempt certain classes of people or certain types of circumstances from the operation of the scheme. For example, Penal Code § 46.15 contains seventeen provisions that exempt people from the § 46.02 offense of unlawfully carrying a weapon.[75] The statutory scheme at issue in the present case, the Private Security Act, contains a dozen non-applicability provisions, many of which

that the vendor filed the required questionnaire not later than the seventh business day after the date the vendor received notice from the local governmental entity of the alleged violation."); TEX. PARKS & WILD. CODE § 62.002(e) ("It is an exception to the application of this section that a person provides only" certain types of materials, software, or hardware.); TEX. TRANSP. CODE § 228.055(d) ("It is an exception to the application of Subsection (a) or (c) if the registered owner of the vehicle is a lessor of the vehicle and not later than the 30th day after the date the notice of nonpayment is mailed provides to the department" certain conditions are met.), (e) ("It is an exception to the application of Subsection (a) or (c) if the registered owner of the vehicle transferred ownership of the vehicle to another person before the event of nonpayment under Section 228.054 occurred or before the date the vehicle was driven or towed through a toll collection facility that results in a notice issued under Section 228.0545, submitted written notice of the transfer to the department in accordance with Section 501.147, and, before the 30th day after the date the notice of nonpayment is mailed, provides to the department the name and address of the person to whom the vehicle was transferred."); *Id.* § 284.0701(d), (e) (nearly identical provisions); *Id.* § 370.177(e), (f) (nearly identical provisions); *Id.* § 451.113(b) ("It is an exception to the application of Subsection (a) that the person: (1) was driving a motor vehicle owned or under the control of the authority and was authorized to drive the vehicle on the designated right-of-way; or (2) was driving an authorized emergency vehicle, as defined by Section 541.201, and responding to a call."); *Id.* § 460.1091(g) ("It is an exception to the application of Subsection (d) that on or before the 30th day after the date the authority notified the person that the person is required to pay the amount of the fare and any administrative fee assessed under Subsection (b), the person: (1) provided proof that the person paid the appropriate fare at the time the person used the transportation system or at a later date or that the person was exempt from payment; and (2) paid the administrative fee assessed under Subsection (b), if applicable."); *Id.* § 661.003(c) ("It is an exception to the application of Subsection (a) or (b) that at the time the offense was committed, the person required to wear protective headgear was at least 21 years old and had successfully completed a motorcycle operator training and safety course under Chapter 662 or was covered by a health insurance plan providing the person with medical benefits for injuries incurred as a result of an accident while operating or riding on a motorcycle."); TEX. WATER CODE § 7.176(b) ("It is an exception to the application of this section that a person unknowingly disposes into the environment any used oil that has not been properly segregated or separated by the generator from other solid wastes."), (c) ("It is an exception to the application of Subsection (a)(2) that the mixing or commingling of used oil with solid waste that is to be disposed of in landfills is incident to and the unavoidable result of the dismantling or mechanical shredding of motor vehicles, appliances, or other items of scrap, used, or obsolete metals."); TEX. CIV. STAT. art. 179e, § 14.05(c) ("It is an exception to the application of this section that the person is a member of a recognized Texas Indian tribe who lives on a reservation or on trust lands located in this state."); Tex. Code Crim. Proc. art. 57.03(c–1) ("It is an exception to the application of this article that" the disclosure is made by the inspector general of the Texas Department of Criminal Justice to an individual within the department.)

75. *See* TEX. PENAL CODE § 46.15(a), (b).

contain multiple exemptions.[76] Liberally construing such exemptions to be exceptions could result in the State having to negate more than a dozen allegations in a charging instrument, even if most of the exemptions would never be in issue in a given case.

### D. Occupations Code

As we have explained above, Occupations Code § 1702.388 makes it an offense if a person "violates a provision of this chapter for which a specific penalty is not prescribed"[77] and prescribes the punishment for such an offense.[78] One provision for which a penalty is not otherwise prescribed, contained § 1702.102, says, "Unless the person holds a license as a security services contractor, a person may not ... act as [a] ... guard company."[79] Another provision, § 1702.108, defines "guard company."[80] Subchapter N of Chapter 1702, containing §§ 1702.321 through 1702.332, lists various types of persons or entities to which Chapter 1702 "does not apply."[81]

Although the heading in Subchapter N is titled "Exceptions,"[82] we have already explained that the heading does not limit or expand the meaning of a statute.[83] Although a heading can sometimes be an aid in construing an ambiguous statute, § 2.03(e) specifically dictates what to do if there is ambiguity with respect to whether a penal statute prescribes an exception or a defense: If the matter is not plainly labeled as an exception under § 2.02(a), then it is construed as a defense under § 2.03. None of the provisions in Subchapter N are plainly labeled in accordance with the language of § 2.02(a).

We are left with two remaining issues. The rule of construction set forth in § 2.03(e) applies only to a "ground of defense" that is "in a penal law."[84] We must determine whether each of the provisions in Subchapter N qualify as a "ground of defense" and whether each such ground of defense is "in a penal law."

To determine what a "ground of defense" is, we find it appropriate to look to the common law, which we have already discussed in part. If a failure to allege a matter appears to make the offense itself incomplete, so that it can be said that a *prima facie* case has not been alleged, then the matter was an element of the offense and not a defensive matter at common law.[85] But similar to other statutory schemes construed by our common law jurisprudence,[86] the non-applicability provisions in Subchapter N are not needed to establish a *prima facie* case. The combination of §§ 1702.102, 1702.108, and 1702.388 allege what is necessary to make out a complete offense for operating as a guard

---

76. *See infra* at n.81.

77. Tex. Occ. Code § 1702.388(a).

78. *Id.* § 1702.388(b) (Class A misdemeanor for first offense and third degree felony if previously convicted under Chapter 1702).

79. *Id.* § 1702.102(a)(1). A different provision defines what a guard company is.

80. *Id.* § 1702.108.

81. *See id.* § 1702.321(a), 1702.322, 1702.323(a), 1702.324(b), 1702.325, 1702.326(a), 1702.327, 1702.328, 1702.329, 1702.330, 1702.331(b), 1702.332(b) (all using the phrase "does not apply").

82. *See* Tex. Occ. Code, Chapter 1702, Subchapter N (heading).

83. *See supra* at n.11 and accompanying text.

84. *See* Tex. Penal Code § 2.03(e).

85. *See supra* at part II.B.

86. *See id.*

company without a license. Moreover, the type of matters alleged in Subchapter N, revolving around the defendant's status, such as his status as a law enforcement official, were considered at common law to be matters peculiarly within the defendant's knowledge and were not ordinarily required to be proven by the State.[87]

■ We next turn to whether the Subchapter N provisions qualify as being "in a penal law." Violations of Chapter 1702 could also subject a person to a civil penalty,[88] so the non-applicability provisions in Subchapter N would be available to defend against both criminal and civil liability. In connection with the dangerous-dog statute in the Health and Safety Code, we recognized that a provision that defends against civil liability can also be a defense to criminal liability in the contemplation of § 2.03(e).[89] And we have found an Election Code provision to be a defense in the contemplation of § 2.03(e),[90] even though that code contained both criminal and civil liability provisions to which the matter could have been urged as a defense.[91] We

also conclude that it would be inconsistent to hold that § 2.02 applies to Subchapter N on the basis of § 1.03(b)'s command that it applies to "offenses" outside the Penal Code and yet also hold that Subchapter N does not involve "penal laws" as contemplated by § 2.03(e). Consistent with our prior discussion, we conclude instead that, to the extent a statute affects the scope of a criminal offense, it involves an "offense" as contemplated by § 1.03(b) and is a "penal law" within the meaning of § 2.03(e).

■ In summary, assuming that § 2.02(c) does not exempt the relevant Occupations Code provisions from the operation of § 2.02, it follows that the non-applicability provisions of Subchapter N, which do not plainly satisfy the labeling requirement of § 2.02(a), are defenses pursuant to § 2.03(e). Consequently, we conclude that these non-applicability provisions are defenses, not exceptions, and the State was not required to negate them in the charging instrument.

We affirm the judgment of the court of appeals.

---

87. *See Lewis v. State,* 7 Tex.App. 567, 568 (1880) ("Under the provisions of our present Penal Code regulating the keeping and bearing of deadly weapons, it is unnecessary in an indictment to allege more than that the defendant did unlawfully carry upon his person, etc., the forbidden weapon. Under former laws, the exceptions were contained in the enacting clause, and it was requisite that each should be substantially negatived. It was never necessary to prove these negative averments, they being always held as matters of defence. ... If the defendant was a soldier or a peace-officer, etc., or was at the time on his own premises, or travelling, or in imminent danger, such fact was peculiarly within his own knowledge, and he should have shown it by the evidence either of his own witnesses or those of the State."); *Summerlin v. State,* 3 Tex.App. 444, 446 (1878) ("That defendant was not a peace officer at the time, being an averment of fact peculiarly within defendant's

knowledge so that he could have no difficulty in showing the truth, no proof of such averments on the part of the state would be required."). *See also supra* at part II.B; Searcy & Patterson, Tex. Penal Code Ann. § 2.03, *Practice Commentary,* p. 60 (discussing defenses as "involving facts peculiarly within the knowledge of the defendant").

88. *See* Tex. Occ. Code § 1702.381.

89. *Chase,* 448 S.W.3d at 15–17, 16 n.54.

90. *Beck,* 583 S.W.2d at 344 n.3, 348 (mailbox rule construed to be defense to criminal prosecution "as it is understood and construed under V.T.C.A., Penal Code, sec. 2.03, in criminal prosecutions," citing § 2.03(e)).

91. *See* Tex. Elec. Code art. 14.07(I)(1) (criminal liability), (J) (civil liability), (K) (civil liability) (1975).

Keasler, J., concurred.

Newell, J., dissented.