

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0423-23

---

**DARYL JOE, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### NAVARRO COUNTY

---

MCCLURE, J., delivered the opinion of the Court in which SCHENCK, P.J., RICHARDSON, NEWELL, WALKER, FINLEY and PARKER, JJ., joined. PARKER, J., filed a concurring opinion in which FINLEY, J., joined. YEARY, J., filed a dissenting opinion. KEEL, J., filed a dissenting opinion.

## <u>O P I N I O N</u>

This case asks the Court to decide one general question and one more specific question: (1) whether the cargo theft statute, TEX. PENAL CODE § 31.18, is materially different from the organized retail theft statute, TEX. PENAL CODE § 31.16, such that they

target different scopes of offenders; and (2) whether the evidence in this case is sufficient to support a conviction for cargo theft beyond a reasonable doubt. We hold that the cargo theft statute is not distinguishable from the organized retail theft statute in its plain language. We find the evidence insufficient to support all elements of cargo theft beyond a reasonable doubt. The judgment of the lower court is therefore reversed, and we remand to the lower court to consider whether the judgment should be reformed to any lesser included offense. *Thornton v. State*, 425 S.W.3d 289 (Tex. Crim. App. 2014).

## I. FACTS

On January 25, 2017, Appellant entered the premises of Corsicana Bedding in Navarro County. He backed his semi-truck up to a trailer containing mattresses that had been manufactured at the bedding facility. The trailer containing the mattresses had been parked in the yard awaiting transport as per regular procedure. A Corsicana Bedding employee, Juan Carlos Perez, became suspicious and started taking pictures of the truck and trailer, as well as Appellant getting out of his truck. Perez later explained that Appellant connected his truck to the trailer, which happened automatically when a truck is backed into that position. To complete the process, Perez explained, Appellant would have to manually attach the brake lines and raise the levelers, but he had not yet completed those two steps when Perez approached.

Corsicana Bedding used JB Hunt trucking to deliver its mattresses and box springs to retailers. Only JB Hunt trucks were authorized to take JB Hunt trailers, and if drivers from outside carriers were assigned to pick up the trailers, they received gate codes and

were required to check in at the loading dock. Appellant was not driving a JB Hunt truck and entered the shipping yard without a gate code when the gate opened for another truck.

Perez knew something was wrong and contacted his supervisor, Raphael Lemus. Lemus arrived and the truck and trailer were no longer connected. Perez and Lemus confirmed that without the brake lines being connected and levelers raised, the trailer containing the mattresses could not be moved. Appellant explained to Lemus that he was there to pick up a load and called his dispatcher to allow Lemus to speak to him. Lemus could not hear the dispatcher due to bad connection and asked his wife to call the police. Appellant told the police he had worked for a trucking company for four days for a man named Clifford Lewis, who had sent him to Corsicana and to whom the truck was registered. In his recorded statement, Clifford Lewis denied any involvement with the incident at Corsicana Bedding. Appellant maintained that he believed he was there to pick up a legitimate load after being dispatched to the location by Mr. Lewis.

The State charged Appellant with cargo theft under TEX. PENAL CODE § 31.18(b)(1). Specifically, the indictment alleged that Appellant "intentionally and knowingly conduct[ed] an activity in which the defendant possessed stolen cargo, to wit: mattresses and box springs by hooking up the truck he was driving to the trailer where the cargo was located . . .."

Section 31.18(b) provides that a person commits the offense of cargo theft if the person:

(1) knowingly or intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, abandons, or disposes of:

(A) stolen cargo . . .

TEX. PENAL CODE § 31.18(b)(1)(A).

The jury convicted Appellant of cargo theft, and the court assessed a sentence of thirty-seven (37) years.

## II. COURT OF APPEALS – *JOE I & II*

In his first appeal, Appellant challenged the sufficiency of the evidence, arguing that the mattresses and box springs were not stolen cargo, and that he did not "possess" the trailer and its contents given that a reasonable fact finder could not have found that he had adequately connected the trailer to his truck. He also argued that even if he possessed the cargo, any "activity" he allegedly conducted would have occurred before the cargo became stolen. The Tenth Court of Appeals affirmed the conviction, finding the contents of the trailer fit the statutory definition of cargo and a rational factfinder could have found Appellant had adequately hooked up the trailer to his truck. *Joe v. State*, 620 S.W.3d 834, 836 (Tex. App.—Waco 2021) ("*Joe I*"); TEX. PENAL CODE § 31.18(a)(1).

This Court agreed with the court of appeals on both points. *Joe v. State*, 663 S.W.3d 728, 729 (Tex. Crim. App. 2022) ("*Joe II*") (Walker, J., dissented). However, the Court remanded for the court of appeals to consider whether Appellant conducted an activity in

which he possessed the stolen cargo. *Joe II*, 663 S.W.3d at 734. This issue was raised on appeal and the court of appeals failed to address it.

### III. COURT OF APPEALS ON REMAND – *JOE III*

The Tenth Court of Appeals again affirmed. *Joe v. State*, No. 10-18-00221-CR. 2023 WL 3878971, at *1 (Tex. App.—Waco June 7, 2023) (Gray, C.J., dissented) ("*Joe III*"). The court found that at the point of backing his truck under the JB Hunt trailer, Appellant's action was sufficient to show possession. *Id*. At the time he possessed the cargo, a rational jury could conclude that he intended to exercise control over the cargo so as to deprive the owner of the property. *Id*. Thus, Appellant stole the cargo at the time he backed the truck under the trailer. *Id*.

The court further held that Appellant's continued possession of the cargo while trying to connect the brake lines constitutes an activity in which he possessed stolen cargo. In other words, the "activity" alleged and proven by the State occurred *after* he stole the cargo. However, Appellant contended on appeal that any activity the State alleged that he conducted occurred *before* the cargo was stolen, *i.e.*, backing the truck up to the trailer and it automatically connecting.

Appellant relied on this Court's holding in *Lang v. State,* 561 S.W.3d 174, 178–84 (Tex. Crim. App. 2018) (*Lang II*), and our interpretation of the nearly-identical organized retail theft (ORT) statute, TEX. PENAL CODE § 31.16. In *Lang*, this Court concluded the statute was ambiguous and turned to legislative history to determine that the statute "was not intended to apply to the conduct of an ordinary shoplifter acting alone." *Lang* II, 561

S.W.3d at 183. Rather, "the statute was enacted for the purpose of targeting professional theft rings involved in the large-scale theft, transfer, repackaging, and reselling of stolen retail merchandise." *Id*. "Nothing about the legislative history signals that this statute was intended to broadly apply to all people who commit ordinary shoplifting of retail merchandise." *Id*.

The court of appeals in this case, however, found the cargo theft statute distinguishable from the ORT statute in *Lang*. *Joe III*, 2023 WL 3878971, at *3. It held the cargo theft statute not ambiguous, and, based on the plain language, found the statute was intended to target individual drivers as well as large theft rings. Appellant now argues that if we were to review the legislative history of the cargo theft statute, it would be evident that it was intended to target only "big fish" in cargo theft schemes and not low-level drivers like him. Therefore, the evidence of his actions as a driver, though undisputed, would be insufficient to support a conviction under TEX. PENAL CODE § 31.18(b)(1).

## IV. LAW

In evaluating the legal sufficiency of the evidence to support a criminal conviction, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Viewing the evidence "in the light most favorable to the verdict" means that the reviewing court must defer to the credibility and weight determinations of the jury because

the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016).

Under *Delay v. State*, "sometimes appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law." 465 S.W.3d 232, 235 (Tex. Crim. App. 2014). Where the parties do not dispute the evidence itself, but the acts the State alleged do not constitute a criminal offense under the statute, then that evidence cannot support a conviction. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Therefore, we turn to analysis of the statutory elements to aid in determining sufficiency.

Statutory construction is a question of law, which we review *de novo. Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009). "Statutory construction depends on the plain meaning of the statute's language unless it is ambiguous, or the plain meaning would lead to absurd results that the legislature could not have possibly intended." *Lopez v. State*, 600 S.W.3d 43, 45 (Tex. Crim. App. 2020). To determine plain meaning, we read the statute in context and give effect to each word, phrase, clause, and sentence if reasonably possible, and we construe them "according to any applicable technical definitions and otherwise according to the rules of grammar and common usage." *Id.* (citing *Lang II*, 561 S.W.3d at 180). "If the plain meaning is not ambiguous and does not lead to absurd results, we do not consider extratextual factors." *Id.*

The foundational rule of statutory construction is to presume that the legislature meant what it said. *Seals v. State*, 187 S.W.3d 417, 421 (Tex. Crim. App. 2005). In adhering to this rule, we show our respect for the legislature and recognize that if it "enacted into law something different from what it intended, it should amend the statute to conform to its intent." *Getts v. State*, 155 S.W.3d 153, 158 (Tex. Crim. App. 2005) (citing *Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004) ("It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.")).

### A. *Lang v. State*, 561 S.W.3d 174 (Tex. Crim. App. 2018)

Much of Appellant's argument rests on our holding in *Lang*, so an in-depth review of the case is warranted. Lang was convicted of organized retail theft after attempting to leave an H-E-B grocery store with several hundreds of dollars' worth of unpaid-for items. The organized retail theft statute reads, in relevant part:

> (b) A person commits an offense if the person intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, or disposes of:
>
> > (1) stolen retail merchandise…

TEX. PENAL CODE § 31.16.

On appeal, Lang argued the statute requires group action or collaborative effort and it would lead to absurd results to construe the statute to permit a conviction for every instance of ordinary shoplifting. The court of appeals rejected these arguments, finding that

nothing in the statutory language requires that the person work with others. It further held that the offense of theft requires a person unlawfully appropriate property of others, so a person who unlawfully appropriates retail merchandise also "possesses" stolen retail merchandise. The lower court "effectively held that a person who commits theft of retail merchandise also necessarily commits the offense of organized retail theft." *Lang*, 561 S.W.3d, at 178. It found this was the only reasonable understanding of the plain language and, thus, the statute was not ambiguous.

This Court disagreed. We held that "stolen" indicates that the alleged "activity" is meant to be conducted with respect to cargo that has already been stolen. There are two interpretations of what could be considered an "activity" with respect to "stolen" merchandise. One reading is that a person in Lang's situation commits the offense by (1) taking the items without paying, satisfying the "stolen" element, and (2) leaving the premises, satisfying the "activity" element. The other reading is that a person commits the offense when she (1) takes the items without paying and leaves the premises, satisfying the "stolen" element, and (2) then conducts some other "activity" separate from those inherent in shoplifting. Because both interpretations were reasonable under the plain language, the Court found the statute ambiguous.

Reviewing extratextual factors like the legislative history revealed that "the organized retail theft statute was intended to reach conduct distinct from that of an ordinary shoplifter acting alone." *Lang*, 561 S.W.3d, at 181. Regarding the sufficiency of the evidence, former Presiding Judge Keller stated in her concurrence, "One does not expect a

person who steals property from a store to remain in the store indefinitely, so leaving the store is not a sufficiently distinct act from the initial theft." *Id.* at 185 (Keller, P.J., concurring). Because the statute was intended to reach offenders who act beyond mere shoplifting, the offense therefore requires proof of an activity that goes beyond the steps inherent in petty shoplifting. Evidence of some activity beyond petty shoplifting was absent, so the evidence was insufficient to support a conviction for organized retail theft.

In the present case, Chief Justice Gray of the 10th court of appeals could not discern a legal or factual difference between *Lang* and this case. *Joe III*, 2023 WL 3878971, at \*9 (Gray, C.J., dissenting). We agree. Regardless of whether the cargo theft statute is ambiguous, this Court has already construed nearly identical statutory language, and that construction governs here.

## V. ANALYSIS

### A. STATUTORY SCOPE

The relevant portion of the cargo theft statute provides:

(1) knowingly or intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, abandons, or disposes of:

(A) stolen cargo . . .

TEX. PENAL CODE § 31.18(b)(1)(A).

In *Lang v. State*, 561 S.W.3d 174 (Tex. Crim. App. 2018), this Court addressed the organized retail theft (ORT) statute, which is virtually identical in language:

(b) A person commits an offense if the person intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, or disposes of:

(1) stolen retail merchandise . . .

TEX. PENAL CODE § 31.16(b)(1).

In *Lang*, we held that the ORT statute requires proof of "conducting, promoting, or facilitating some activity distinct from the mere activity inherent in the ordinary shoplifting of retail items by a single actor." *Lang II*, 561 S.W.3d at 183.

The ORT statute was enacted in 2007, while the cargo theft statute was enacted in 2015. Given their nearly identical wording, the later statute was patterned after the former. Where the statutory text is indistinguishable, the interpretation should likewise be the same. As we have previously recognized, "we are not writing on a clean slate." *Busby v. State*, 990 S.W.2d 263, 267 (Tex. Crim. App. 1999). Accordingly, the cargo theft statute—like the ORT statute—requires proof of conduct distinct from the theft itself.

The facts here parallel those in *Lang*. In *Lang*, the defendant was apprehended just after she left a grocery store with stolen items. We held that her departure from the store was inherent in shoplifting and not proof of an additional "activity." Similarly, here Appellant merely backed his truck toward a trailer but was apprehended before connecting the brake lines, raising the levelers, or moving the trailer. As in *Lang*, the conduct was inherent in the attempted theft and not a separate facilitative activity.

The State urges us to distinguish this case based on the title of the statutes. We reject that argument. The title of a statute does not limit or expand its meaning. TEX. GOV'T CODE

§ 311.023(7); *Baumgart v. State*, 512 S.W.3d 335, 339 (Tex. Crim. App. 2017) ("The heading of a . . . section does not limit or expand the meaning of a statute." (quoting TEX. GOV'T CODE § 311.023(7))). We did not rely on the ORT statute's title in *Lang*, nor do we find it dispositive here.

The only substantive difference between the two statutes is that § 31.18(b)(2) adds liability for drivers who are lawfully contracted to transport cargo but fail to deliver it or break the vehicle seal. That addition does not affect the identical language at issue here.

## B. SUFFICIENCY OF THE EVIDENCE

The evidence in each individual case still must support proof of each element beyond a reasonable doubt, including the "activity" element. We read the activity element of cargo theft as the *Lang* Court did. That is, there must be some separate activity conducted aside from the tasks inherent in stealing. Having considered *Lang* and applying the ordinary rules of grammar, we hold that there is but one reasonable construction of when the 'activity' occurs in a cargo-theft offense. Based on the use of the past participle of "steal" ("stolen"), we read the activity in the statute to necessarily occur *after* all the acts that must happened to make the cargo "stolen."

This understanding allows the nearly identical cargo theft and ORT statutes to be applied in harmony. We agree with Appellant that the act that constitutes stealing the cargo cannot also be the activity in which he possessed the goods. To hold otherwise renders the activity element of the statute redundant.

The indictment here alleged that Appellant "intentionally and knowingly conduct[ed] an activity in which [he] possessed stolen cargo, to wit, mattresses and box springs by hooking up the truck he was driving to the trailer where the cargo was located." But this activity of hooking up the truck to the trailer is inherent in stealing the cargo. Therefore, proof of hooking up the truck to the trailer cannot support the activity element. Although it is not a defense that Appellant was interrupted by Corsicana Bedding employees before he could take further action that may have supported the "activity" element, the evidence falls short nonetheless. No reasonable juror would find beyond a reasonable doubt that Appellant conducted some activity beyond the tasks inherent in stealing the cargo (i.e. connecting the truck to the trailer, hooking up the brake lines, and raising the levelers). Therefore, we hold the evidence insufficient to support a conviction under TEX. PENAL CODE § 31.18(b)(1).

## VI. CONCLUSION

Because there is no material difference between the ORT statute in *Lang* and the cargo theft statute here, we find the cargo theft statute ambiguous in parity. Extratextual factors lead us to hold the intent of the statute does extend to the type of conduct Appellant engaged in. However, because attempting to hook up the brake lines is not an activity separate from the acts inherent in stealing the cargo, it does not meet the "activity" element of the statute. Therefore, the evidence is insufficient to support a conviction of cargo theft. The decision of the court of appeals is reversed, and the case is remanded for the lower

court to consider whether the judgment should be reformed to any lesser included offense.

*Thornton v. State*, 425 S.W.3d 289 (Tex. Crim. App. 2014).

Delivered: November 20, 2025

Publish