**Salem ABRAHAM, Appellant**

v.

**Daniel GREER and Fix the Facts Foundation d/b/a AgendaWise, Appellee**

**No. 07–12–00494–CV**

Court of Appeals of Texas, Amarillo.

November 30, 2016

Rehearing Overruled December 27, 2016

Discretionary Review Denied April 21, 2017

---

John H. Lovell, Joe L. Lovell, Courtney D. Miller, for Appellant.

James E. "Trey" Trainor III, Joseph M. Nixon, Nicholas D. Stepp, N. Terry Adams Jr., for Appellee.

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

## OPINION

Brian Quinn, Chief Justice

Upon reversing and rendering a decision on the first issue we addressed via our prior opinion in this cause, the Texas Supreme Court directed us to consider the remaining issues raised by Salem Abraham. *Greer v. Abraham,* 489 S.W.3d 440, 448 (Tex. 2016). It should be recalled that he appealed from an order dismissing his libel suit against appellees Daniel Greer and Fix the Facts Foundation d/b/a AgendaWise. That dismissal occurred under the framework of Chapter 27 of the Texas Civil Practice and Remedies Code. The remaining issues before us involve 1) the claim of journalist privilege urged by a deponent during his deposition, 2) the status of Greer and AgendaWise as journalists, and 3) the constitutionality of Chapters 22 and 27 of the Civil Practice and Remedies Code. We overrule each and affirm the order.

*Background*

The dispute arose from the publication of Greer and AgendaWise of an article in their internet column. It falsely accused Abraham of engaging in certain conduct at a political event. The initial falsehoods were retracted, though the writer uttered another falsehood against Abraham in the retraction. This sequence of events resulted in Abraham suing Greer and AgendaWise for libel. Greer and AgendaWise moved to dismiss the suit under Chapter 27 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001, *et. seq.*[1] After permitting abbreviated discovery and conducting a hearing on it, the trial court granted the motion.

In our initial opinion, we dealt with whether Abraham was obligated to prove actual malice, given his status as an elected member to the local school board in rural Texas. Our decision that he did not was reversed by the Supreme Court. It then remanded the cause to us for consideration of the remaining issues raised by Abraham in his initial appeal.

---

1. The statute was amended in part in 2013. *See* Act of June 14, 2013, 83rd Leg., R.S., ch. 1042, § 1, 2013 Tex. Gen. Laws 1042. The suit before us was filed in 2012. Thus, we apply those provisions of Chapter 27 of the Civil Practice and Remedies Code in effect when suit was filed and before the 2013 amendments. *See* Act of May 18, 2011, 82nd Leg., R.S., ch. 341, § 1, 2011 Tex. Gen. Laws 961 (stating that "[t]he change in law made by this Act applies only to a legal action filed on or after the effective date of this Act [June 17, 2011].").

In response to the Supreme Court's decision, we afforded all parties opportunity to file supplemental briefing. Each accepted the chance.

*Issue One—Failure to Rule*

█ The first issue we address concerns Abraham's complaint about the trial court failing to "... rule[ ] upon [his] Motion to Overrule Privilege Objections and Order Disclosure Pursuant to Texas Civil Practice and Remedies Code Section 22.024 and ordering Daniel Greer to fully testify." The motion was filed on the day the trial court was statutorily required to rule upon the motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(a) (stating that "[t]he court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion."). The motion was not ruled upon, as reflected in the trial court's findings of fact and conclusions of law. More importantly, Abraham did not object to the omission before the order of dismissal was signed or via a motion for new trial. Such is fatal to his complaint on appeal. Tex. R. App. P. 33.1(2)(B) (specifying the requirements for preserving a complaint for review, one of which mandates that the record show that the complaining party objected to the trial court's refusal to rule on a motion, objection, or request); *Phillips v. Bramlett*, 258 S.W.3d 158, 170 (Tex. App.—Amarillo 2007), *reversed on other grounds*, 288 S.W.3d 876 (Tex. 2009) (holding that "[t]o preserve a complaint for appeal, the complaining party is required to obtain an adverse ruling from the court or object to the trial court's refusal to rule."). Having failed to object at the earliest opportunity available (*i.e.* the motion for new trial), Abraham did not preserve his complaint, which, in turn, bars us from considering it. *FDIC v. Lenk*, 361 S.W.3d 602, 604 (Tex. 2012) (directing that "[w]hen a party fails to preserve error in the trial court or waives an argument on appeal, an appellate court may not consider the unpreserved or waived issue."). The issue is overruled.

*Issue Two—Journalist*

█ Next, Abraham contends that the trial court erred in ruling that Greer and AgendaWise were journalists. We overrule this issue for several reasons.

First, Abraham raised the matter of Greer and AgendaWise not being journalists in both a response to their motion to dismiss and in his "Motion to Overrule Privilege Objections ..." to which we alluded above. And, as discussed above, the trial court did not rule on the latter, which inaction drew no timely or contemporaneous complaint from Abraham to the trial court. Given these circumstances, the issue of whether Greer and AgendaWise were journalists was not preserved for review. *Phillips v. Bramlett, supra.*

Second, in perusing the trial court's findings of fact and conclusions of law, we found none holding Greer or AgendaWise to be "journalists."[2] Nor did it hold, via its factual findings and conclusions of law, that Greer or AgendaWise were "journalists." Indeed, the possibility of Greer in-

---

**2.** The statutory definition of "journalist" includes "a person, including a parent, subsidiary, division, or affiliate of a person, who for a substantial portion of the person's livelihood or for substantial financial gain, gathers, compiles, prepares, collects, photographs, records, writes, edits, reports, investigates, processes, or publishes news or information that is disseminated by a news medium or communication service provider ...." Tex. Civ. Prac. & Rem. Code Ann. § 22.021(2). It also "... includes ... a person who at the time the person obtained or prepared the requested information ... was serving as an agent, assistant, employee, or supervisor of a news medium or communication service provider." *Id.* § 22.021(B)(ii).

voking the journalist's privilege was broached in a telephonic hearing conducted on October 11, 2012, or twenty-nine days after the trial court held its initial hearing on the motion to dismiss. At that October 11th proceeding, the trial court granted Abraham's request for limited discovery, that is, his request to depose Greer. Greer's counsel then informed the court that Greer would most likely invoke the journalist's privilege. This lead the trial court to observe that: 1) "the journalist part comes in after he asserts his privilege," and 2) "... if he asserts the privilege then [Abraham] can question him on whether or not he qualifies for the privilege ... I think the threshold issue is he's going to have to ask him something to—that would be—allow him to assert the privilege." We construe these observations as revealing that the trial court did not rule upon whether Greer was a "journalist" before the deposition occurred. Nor did it convene a subsequent hearing to address the matter or resolve the dispute in its findings of fact and conclusions of law, order of dismissal, or letter rulings.

Nonetheless, we encountered a conclusion of law wherein the trial court described both Greer and "Fix the Facts Foundation" (*i.e.* AgendaWise) "as print media." What the trial court intended by that term is something no one addressed in their respective appellate brief. Nor do we find it within the definition of "journalist" provided in § 22.021 of the Civil Practice and Remedies Code. However, if we were to assume *arguendo* that the term somehow alluded to the phrase "news medium" under § 22.021(3) of that same Code

and, therefore, meant Greer and Agenda-Wise were "journalists," we would remain obligated to overrule the issue.[3]

Abraham argued in his initial brief that "AgendaWise did not meet any of the earmarks of being a 'news medium.'" This was so because it did "not disseminate news or information to the public" but rather "... simply posts the opinions of the Empower Texans PAC, and attacks opponents of its favored political candidates." If, as suggested by Abraham, the lack of bias were the true barometer for whether an entity or individual was a "news medium" or "journalist," then few businesses historically deemed to be part of the news media would qualify as journalists or news media. Indeed, newspapers commonly endorse particular candidates running for elected office. That certainly shows a bias. Yet it cannot be denied that they nonetheless engage in journalistic activities.

■ Bias and selectivity in reporting is not the test. Rather, an entity or person gains the status of "news medium" by falling within the definition of the phrase. And, the legislature provided us with the applicable definition. In chapter 22 of the Civil Practice and Remedies Code, we are told that a "news medium" is "... a newspaper, magazine or periodical, book publisher, news agency, wire service, radio or television station or network, cable, satellite, or other transmission system or carrier or channel, or a channel or programming service for a station, network, system, or carrier, or an audio or audiovisual production company or Internet com-

---

**3.** The legislature defined "news medium" as "... a newspaper, magazine or periodical, book publisher, news agency, wire service, radio or television station or network, cable, satellite, or other transmission system or carrier or channel, or a channel or programming service for a station, network, system, or car-

rier, or an audio or audiovisual production company or Internet company or provider, or the parent, subsidiary, division, or affiliate of that entity, that disseminates news or information to the public by any means, including ... print ...." Tex. Civ. Prac. & Rem. Code Ann. § 22.021(3).

pany or provider, or the parent, subsidiary, division, or affiliate of that entity, that disseminates news or information to the public by any means, including ... print ... [and] other means, known or unknown, that are accessible to the public." Tex. Civ. Prac. & Rem. Code Ann. § 22.021(3). It is the part of the definition alluding to the dissemination of "news and information to the public" that Abraham apparently believes AgendaWise and Greer failed to meet.[4] Yet, what is the published article underlying Abraham's claim of defamation? It purported to describe various political races and the identity of donors to the candidates running in those races. That is the dissemination of "information." *See* "information" Merriam-Webster, http://www.merriam-webster.com/dictionary/information, (last visited November 4, 2016) (defining "information" as "knowledge you can get about someone or something" and "facts or details about a subject"); *Information Definition*, Dictionary.com, http://www.dictionary.com/browse/information (last visited November 4, 2016) (defining "information" as knowledge communicated or received concerning a particular fact or circumstance," "news," "knowledge gained through study, communication, research, instruction, etc.," and "factual data"). It also solicited and secured "press credentials" from and reported on other political events throughout Texas. That too is the dissemination of "information." Other evidence of record indicates that it gathered and reported on "proceedings" occurring in the State Capitol. That such is the dissemination of "information" cannot be reasonably disputed either. Nor can it be reasonably disputed that placing articles written by

the few AgendaWise staff on the internet is anything short of dissemination of the article's content to the public by a "means ... accessible to the public." *See Kaufman v. Islamic Society of Arlington*, 291 S.W.3d 130, 141 (Tex. App.—Fort Worth 2009, pet. denied) (observing that courts have recognized the internet as a type of nontraditional electronic media).

One may not agree with the article's content. One may also find the article's slant to be objectionable. But, finding the content acceptable to one's senses is not determinative here. Nor does it matter if the writer or entity publishing the missive fits some historic concept of journalism. What controls here is the definition provided by the legislature in § 22.021(3) of the Civil Practice and Remedies Code. More importantly, the trial court had before it sufficient data on which to conclude that AgendaWise and Greer disseminated information to the public via a medium accessible to the public as contemplated by that statute. So, to the extent that the trial court intended the phrase "print media" to mean "news medium," we cannot say its decision constituted an abuse of discretion. *See In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 261 (Tex. 2005) (holding that decisions regarding whether a person is entitled to an evidentiary privilege are reviewed under the standard of abused discretion).

*Issue Three—Constitutionality of Statutes*

 Finally, Abraham raises constitutional issues implicating the open courts provision of our Texas Constitution[5] and the due process clauses found in both the

---

4. That was the only aspect of the definition addressed by Abraham.

5. Stating, in part, that "[a]ll courts shall be open, and every person for any injury done

him, in his lands, goods, person, or reputation, shall have remedy by due course of law." Tex. Const. art. 1, § 13.

Texas [6] and United States [7] Constitutions. Specifically, he contends that Chapters 22 and 27 of the Civil Practice and Remedies Code are unconstitutional when read independently and together. However, his discussion only encompasses 1) the impact of those statutes when read together and 2) the application of the open courts provision. Thus, our comments will be limited to scope of his discussion.[8] *See Thomas v. State*, No. 02–14–00441–CR, 2016 WL 4538556, 2016 Tex. App. LEXIS 9811 (Tex. App.—Fort Worth August 31, 2016, no pet.) (mem. op., not designated for publication). And, the substance of Abraham's argument is:

> ... § 27.003(c) handcuffs a plaintiff from obtaining discovery of necessary elements of proof, proof which almost certainly is in the sole control of the defendant, while § 22.023 makes the disclosure of evidence of the necessary element of proof of malice undiscoverable, even if any discovery is allowed or permitted. When a privilege under § 22.023 is asserted in defense of a defamation claim, §§ 27.001, et seq, creates an impossible condition for a violated plaintiff to obtain access to the courts for a remedy ... These statutes constitute an unconstitutional 'Catch 22.'

■ It is beyond dispute that the open courts provision of the Texas Constitution guarantees litigants the right to their day in court. *Offenbach v. Stockton*, 285 S.W.3d 517, 522 (Tex. App.—Dallas 2009), *aff'd*, 336 S.W.3d 610 (Tex. 2011). But, it is not absolute. Rather, " 'it guaran-

tees that a common law remedy will not be unreasonably abridged.' " *Tenet Hosp. Ltd. v. Rivera*, 445 S.W.3d 698, 703 (Tex. 2014); *quoting Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504 (Tex. 1995). That is, while a statute that totally forecloses judicial review may violate the provision, one that merely presents hurdles to judicial review may withstand scrutiny. *Offenbach v. Stockton*, 285 S.W.3d at 522–23. And, as previously mentioned, "... an open courts challenge is a due process complaint" which also "requires the party to use due diligence." *Id.* Indeed, a complainant may not obtain relief from the provision if he does not exercise due diligence in pursuing his claim. *Stockton v. Offenbach*, 336 S.W.3d 610, 618 (Tex. 2011). With this in mind, we turn to the dispute at bar.

Abraham is correct in arguing that upon a defendant moving to dismiss a suit encompassed by §§ 27.001 *et. seq.* of the Civil Practice and Remedies Code, the continuation of discovery is impeded. Tex. Civ. Prac. & Rem. Code Ann. § 27.003(c) (stating that "[e]xcept as provided by Section 27.006(b), on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss."). Impeded though does not mean prohibited. As discussed by the language of both § 27.003(c) and § 27.006(b), some discovery is permissible. That is, the trial court "may allow specified and limited discovery relevant to the motion" to dismiss, upon a showing of

---

**6.** Stating that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or any manner disfranchised except by the due course of the law of the land." Tex. Const. art. 1, § 19.

**7.** Stating, in part, that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any

person of life, liberty, or property, without due process of law ...." U.S. Const. amend XIV, § 1.

**8.** The reason for omitting separate discussion of the due process clauses may relate to the fact that a complaint founded upon the open courts provision is actually a due process challenge. *Tenet Hosp. Ltd. v. Rivera*, 445 S.W.3d 698, 703 (Tex. 2014).

"good cause." *Id.* § 27.006(b). Such discovery may also encompass effort to depose witnesses having relevant information, including "journalists." And, that the latter may invoke the journalist privilege encompassed in § 22.023 of the Civil Practice and Remedies Code does not necessarily mean the plaintiff's ability to pursue his libel claim is thwarted. This is so because a trial court retains the authority to compel such witnesses "to testify regarding or to produce or disclose any information, document, or item or the source of any information, document, or item obtained while acting as a journalist" upon the satisfaction of certain prerequisites. *Id.* § 22.024 (describing those prerequisites as proof that 1) all reasonable efforts have been exhausted to obtain the information from alternative sources; 2) the subpoena is not overbroad, unreasonable, or oppressive and, when appropriate, will be limited to the verification of published information and the surrounding circumstances relating to the accuracy of the published information; 3) reasonable and timely notice was given of the demand for the information, document, or item; 4) in this instance, the interest of the party subpoenaing the information outweighs the public interest in gathering and dissemination of news, including the concerns of the journalist; 5) the subpoena or compulsory process is not being used to obtain peripheral, nonessential, or speculative information; and 6) the information, document, or item is relevant and material to the proper administration of the official proceeding for which the testimony, production, or disclosure is sought and is essential to the maintenance of a claim or defense of the person seeking the testimony, production, or disclosure). So, the contention that "... § 22.023 makes the disclosure of evidence of the necessary element of proof of malice undiscoverable, even if any discovery is allowed or permitted" is inaccurate. Discovery could occur even though the target of discovery invoked a privilege.

Admittedly, though, the time frame in which one may pursue such discovery was somewhat abbreviated. According to statute, the trial court had to rule on the motion to dismiss within thirty days of the date on which it heard the motion. *Id.* § 27.005(a). If it did not do so, then the motion was deemed denied by operation of law, and the movant was then entitled to appeal. *Id.* § 27.008(a). Yet, the statute did not denote a time certain by which the hearing had to be held. Rather, its directive that a "hearing ... must be set not later than the 30th day after the date of service of the motion unless the docket conditions of the court require a later hearing," *Id.* § 27.004, was construed as referring to the act of setting a hearing, not to the act of holding a hearing. *In re Lipsky*, 411 S.W.3d 530, 540–41 (Tex. App.—Fort Worth 2014, pet. denied). This meant that the trial court had some flexibility in extending the time for a hearing, despite the need for a relatively quick decision. *Id.* (wherein the trial court granted a motion to continue the hearing and ultimately heard the motion over four months after it was filed).

When read together, sections 22.023, 22.024, 27.003(c), 27.004, 27.005(a) and 27.006(b) of the Texas Civil Practice and Remedies Code reflected a limitation upon the ability to freely prosecute a defamation suit. When read together they evince legislative desire to have jurists quickly address motions to dismiss filed under § 27.003(a) of that same Code. Yet, that desire did not foreclose the prosecution of a defamation suit. Measures were included within both Chapters 22 and 27 of the Texas Civil Practice and Remedies Code to assure that the defamed person had opportunity to garner necessary evidence.

We further note that Abraham did not complain before us of the time periods involved or of some legal impediment to satisfying the requirements of § 22.024 and, thus, overcoming a journalist's claim of privilege. Nor did he complain before us of the trial court's decision to hold a hearing within a month of the date on which Greer and AgendaWise moved to dismiss the suit. Indeed, missing from the record is any written motion on his part to continue the hearing date for any reason, including one founded upon the need to conduct limited discovery. Moreover, Abraham received opportunity to not only conduct limited discovery but also present that discovery and supplemental briefing to the trial court before it actually ruled on the motion to dismiss. The record is silent on why the discovery was afforded to Abraham only days before the trial court was statutorily obligated to rule on the motion to dismiss. What is known, though, is that twenty-nine days lapsed between the date on which the trial court heard the motion to dismiss and the date on which Abraham was granted leave to depose various individuals. Given that twenty-nine day period, the statutory need for timely action, and the trial court's apparent recognition of that need, it is conceivable that such discovery could have occurred in ample time to address potential claims of journalist privilege. Yet, we are left to guess at what, if anything, happened during that period and why discovery was not vigorously pursued earlier. So, the circumstances at bar do not permit us to conclude that the interplay between Chapters 22 and 27 of the Civil Practice and Remedies Code "unreasonably abridged" Abraham's common law remedy for defamation. The interplay did not contravene the open courts provision of the Texas Constitution under the particular facts before us.

Accordingly, the remaining issues which the Texas Supreme Court directed this court to consider are overruled, and the order of dismissal is affirmed.