**Opinion issued June 27, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00298-CV

_____

## ERIC LYNN BAUMGART, Appellant

## V.

## PHILLIP DOUGLAS ARCHER, KPRC-TV CHANNEL 2, GRAHAM MEDIA GROUP, HOUSTON, INC., GRAHAM MEDIA GROUP, GRAHAM HOLDINGS COMPANY, Appellees

On Appeal from the 157th District Court
Harris County, Texas
Trial Court Case No. 2017-83349

## O P I N I O N

When Harris County Assistant Chief Deputy Constable Clint Greenwood was

gunned down in a courthouse parking lot, the murder made headlines. According to

appellant Eric Baumgart, a television broadcast and related web article published by

appellees Phillip Douglas Archer; KPRC-TV Channel 2; Graham Media Group, Houston, Inc.; Graham Media Group; and Graham Holdings Company (collectively, "Graham Media") falsely suggested to the public that he was "the assassin."[1]

Baumgart sued Graham Media for defamation. Graham Media moved for and obtained dismissal of Baumgart's claims and an award of attorney's fees under the Texas Citizens Participation Act (TCPA or the "Act"). *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. Baumgart appeals on numerous grounds, contending that (1) the TCPA does not protect Graham Media's defamatory speech; (2) he made a prima facie showing of defamation; (3) the trial court's refusal to allow discovery before dismissing his claims violated Texas's due-process guarantee of open courts; (4) a jury trial on the reasonableness of Graham Media's attorney's fees was constitutionally required; and (5) the TCPA operates, on its face and as-applied, as an unconstitutional restraint on a plaintiff's speech. We affirm.

**Background**

Baumgart was a reserve officer with the Liberty County Constable's Office and an investigator with the Harris County Public Defender's Office when he was charged with crimes—acting as a private security guard without the appropriate

---

[1]     Law enforcement later determined that William Kenny, a man who is not alleged to have any connection to Baumgart, committed the murder.

license and tampering with a governmental record.[2] Baumgart pleaded not guilty, a jury convicted him on all charges, and all but one charge was affirmed on appellate review. *See Baumgart v. State*, 512 S.W.3d 335, 349 (Tex. Crim. App. 2017) (licensing violations); *Baumgart v. State*, No. 01-14-00320-CR, 2015 WL 5634246, at *3–4 (Tex. App.—Houston [1st Dist.] July 27, 2016, pet. ref'd) (tampering with governmental record). Baumgart began serving a 90-day sentence in January 2017. Baumgart was still incarcerated at the time Assistant Chief Deputy Greenwood was shot and killed outside a courthouse in Baytown, Texas.

Baumgart alleges that he served time in jail because of Greenwood's vendetta against him. According to Baumgart, the vendetta began when Baumgart helped draft a federal civil rights complaint against Harris County. And the complaint provoked Greenwood, who then served as an assistant district attorney in the police integrity unit, not only to prosecute retaliatory criminal charges against Baumgart, but also, to pressure the public defender to end his employment.

While he was incarcerated, Baumgart submitted a request under the Texas Public Information Act, *see* TEX. GOV'T CODE §§ 552.001 *et seq.*, for Greenwood's "employee time records" for the month of December 2016. Greenwood perceived

---

[2]     Under the Private Security Act, codified in the Occupations Code, people or entities that engage in certain private security businesses must have a license. TEX. OCC. CODE § 1702.102(a); *Baumgart v. State*, 512 S.W.3d 335, 337, 349 (Tex. Crim. App. 2017). Engaging in such a business without a license is a criminal offense. TEX. OCC. CODE § 1702.388; *Baumgart*, 512 S.W.3d at 337, 349.

this as a threat and asked that his records not be released. In an email regarding Baumgart's public-records request, Greenwood told a Harris County attorney that Baumgart "poses a real threat to my, and my family's[,] safety." Greenwood's records were not released.

Phillip Douglas Archer, a Graham Media journalist working for the Houston NBC affiliate known as KPRC, learned of Baumgart's public-records request during his investigation of Greenwood's murder. Archer interviewed Baumgart the day after Greenwood died, and asked about Baumgart's fraught relationship with Greenwood, whether the men perceived one another as a safety threat, and Greenwood's death.

The same day, KPRC ran a television news story and related article, both of which KPRC published on its website, about Greenwood's murder and the documented hostility between Baumgart and Greenwood. Archer was the reporter. The web article—entitled "Slain deputy constable feared former officer he had investigated, source says"—read in its entirety:

> Five days before he was slain, Clint Greenwood told officials in the county attorney's office that he believed a man he'd helped send to jail was a threat to him and his family.
>
> The man he was talking about is currently a prisoner in the Harris County Jail, Eric Baumgart, a former investigator for the Harris County Public Defender's Office and a reserve officer with the Liberty County police agency.

4

Greenwood helped convict him of tampering with a government document and with providing private security services without a license in 2014.

Baumgart, 47, was sentenced to 90 days in jail and five years of probation. He began serving his sentence in January.

In an interview Tuesday afternoon at the jail, Baumgart said county detectives searched his belongings on Monday, following Greenwood's death, but he says they still haven't spoken to him.

Last January, a source close to the murder investigation said Baumgart submitted a freedom of information request from jail asking for Greenwood's pay records.

Greenwood was contacted by the county attorney's office, and asked that the records not be released.

Greenwood sent another email on March 30 saying he believed Baumgart was a threat to him and his family, according to the source.[3]

On Tuesday, Baumgart attributed that statement to what he calls a vendetta Greenwood waged against him after Baumgart helped a friend file a civil rights lawsuit against the county in 2012.

He says Greenwood ruined his career and put him in jail. He said he considered Greenwood a threat to him.

During the election last fall, Baumgart ran an ad accusing Greenwood's boss at the time, District Attorney Devon Anderson, of corruption – naming Greenwood in the ad – among others.

When asked if he wanted Clint Greenwood dead – or had anything to do with his murder, Baumgart said, "Of course not."

He says he expects investigators will be talking to others who were involved in the lawsuit with him.

---

3    In court filings, Graham Media identified Robert Soard, a Harris County attorney, as "the source" of this information.

> Police investigating Greenwood's death have not named Baumgart, or anyone else, as a suspect in this case.
>
> *Editor's note: An earlier version of this story reported that Baumgart had been questioned in connection with Greenwood's homicide, and that Baumgart worked as a reserve deputy at the Liberty County Sheriff's Office. The corrected version of the story is above.*

This same information was also conveyed to a viewing audience in a television broadcast.

Baumgart asserts that the murder coverage published by KPRC falsely portrayed him as Greenwood's "assassin." According to Baumgart, the defamatory coverage was motivated by Graham Media's desire to increase advertising revenue through click-bait headlines. He sued Graham Media, pleading causes of action for defamation per se and *per quod* and negligence. Graham media moved to dismiss Baumgart's lawsuit under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a) ("If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action."). Baumgart opposed the motion and requested discovery. Before it ruled on Baumgart's discovery request, the trial court issued an order granting Graham Media's TCPA motion and dismissing all Baumgart's claims. After a subsequent hearing, the trial court awarded Graham Media more than $130,000 in attorney's fees, costs, and sanctions. *See id.* § 27.009(a) ("If the court orders dismissal of a legal action . . . , the court shall award to the moving party:

6

(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions . . . as the court determines sufficient to deter the party who brought the legal action from bringing similar actions[.]").

## TCPA Rulings

We first consider whether Graham Media and Baumgart satisfied their respective burdens under the TCPA and whether the trial court erred by not permitting Baumgart to conduct discovery before dismissing his claims.

## A.     Principles of law and standard of review

"The Texas Citizens Participation Act is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Dallas Morning News, Inc. v. Hall*, No. 17-0637, 2019 WL 2063576, at *4 (Tex. May 10, 2019). A defendant in a case that is "based on, relates to, or is in response to a party's exercise of the right of free speech" may move for dismissal under the Act. TEX. CIV. PRAC. & REM. CODE § 27.003(a). Dismissal requires two steps. First, the defendant must show, by a preponderance of the evidence, that the "legal action is based on, relates to, or is in response to [its] exercise of the right of free speech." *Id.* § 27.003(a) (internal punctuation omitted). Upon this showing, the burden shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). The Act also requires

dismissal of the case if the defendant "establishes by a preponderance of the evidence each essential element of a valid defense to the [plaintiff's] claim." *Id.* § 27.005(d).

A prima facie case is "the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016) (citing *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015)). The clear-and-specific-evidence requirement means the plaintiff "must provide enough detail to show the factual basis for its claim" and must provide enough evidence "to support a rational inference that the allegation of fact is true." *Lipsky*, 460 S.W.3d at 590–91; TEX. CIV. PRAC. & REM. CODE § 27.005(c).

If the plaintiff fails to carry his burden—or if the defendant establishes the essential elements of a valid defense under section 27.005(d)—the trial court must dismiss the suit. In deciding if dismissal is warranted, we consider all the "pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a). We review de novo whether each party carried its assigned burden under the TCPA. *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

## B. Whether Graham Media satisfied its TCPA burden

The trial court found that Baumgart's lawsuit was based on Graham Media's exercise of the right of free speech, which the TCPA defines as "a communication

made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). A "[m]atter of public concern" includes an issue related to "health or safety;" "community well-being;" "the government;" or "a public official or public figure." *Id.* § 27.001(7).

Baumgart does not dispute that the murder of a high-ranking law enforcement officer was a matter of public concern. His complaint is that Graham Media identified him as a past threat to Assistant Chief Deputy Greenwood even though Graham Media knew he could not have committed the murder because he was in jail at the time. According to Baumgart, "[k]nowingly linking an innocent person to an assassination and placing a family in harm's way" is neither "free speech" under the TCPA nor "journalism . . . intended to benefit the community."

We agree with Graham Media that its reporting on Baumgart's historical conflict with Greenwood involved a matter of public concern and, thus, is speech protected by the TCPA. "Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community'" or when it "'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). The courts routinely hold that "matters related to the reporting of crimes and related proceedings are matters of public concern." *Klentzman v. Brady*, 456 S.W.3d 239,

258 (Tex. App.—Houston [1st Dist.] 2014), *aff'd*, 515 S.W.3d 878 (Tex. 2017). So too are the activities of government officials and law enforcement personnel. *Klentzman*, 456 S.W.3d at 258; *see Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 769 (1986) (holding that news articles asserting that private businessman used organized-crime connections to influence governmental processes were on issues of public concern); *Connick*, 461 U.S. at 148 (holding that speech seeking to "bring to light actual or potential wrongdoing or breach of public trust" by government official constitutes speech on matter of public concern); *Brawner v. City of Richardson*, 855 F.2d 187, 191–92 (5th Cir. 1988) (holding that alleged misconduct by public officials, particularly law enforcement officials, is matter of public concern).

The speech Baumgart complains of concerned (1) the fraught relationship between Greenwood, a high-ranking peace officer, and Baumgart, a former peace officer, which at least Greenwood believed could become violent, and (2) allegations of official misconduct by Greenwood in prosecuting Baumgart in retaliation for his effort to hold the county responsible for alleged civil rights violations. Such speech detailing the prosecution of one peace officer and the allegations of misconduct against another peace officer and former prosecutor is a communication made in connection with an issue related to health or safety, community well-being, government, or public officials, and thus, is a matter of public concern. *See Cox*

*Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government."); *see also Opaitz v. Gannaway Web Holdings, LLC*, 454 S.W.3d 61, 66 (Tex. App.— Amarillo 2014, pet. denied) (explaining that because of public trust placed in law enforcement officers, public has interest in information considering an officer's fitness for duty). Baumgart's legal action asserting claims against Graham Media was filed "in response to" this speech addressing his relationship with Greenwood. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a). Accordingly, Baumgart's contention that Graham Media failed to meet its initial burden is without merit.[4]

---

[4]   Baumgart also argues, for the first time on appeal, that his legal action is exempted from the Act's protection because it is "commercial speech." *See* TEX. CIV. PRAC. & REM. CODE § 27.010(b); *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (setting forth elements of TCPA's commercial-speech exemption). We do not reach this contention because it is waived by Baumgart's failure to raise it with the trial court. *See* TEX. R. APP. P. 33.1 (explaining that, as prerequisite to presenting complaint for appellate review, record must show complaint was made to trial court and trial court ruled or refused to rule); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 88–89 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding that burden of proving TCPA exemption under Section 27.010 is with party claiming it); *see also Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 206 n.75 (Tex. App.—Austin 2017, pet. dism'd) (concluding that application of commercial-speech exemption could not be raised for first time on appeal).

We thus turn to the question whether Baumgart met his burden to establish by clear and specific evidence a prima facie case for each essential element of his claims that were subject to dismissal. *See id.* § 27.005(c).

## C.     Whether Baumgart satisfied his TCPA burden

Baumgart asserted defamation and negligence claims against Graham Media; however, only his defamation claim is at issue on appeal. Beyond his threshold assertion that Graham Media's speech is not protected by the TCPA, which we rejected above, Baumgart has made no argument in support of his negligence claim. We thus consider the negligence claim abandoned on appeal and only decide whether the record establishes "by clear and specific evidence a prima facie case for each essential element of the [defamation] claim in question." *Id.*[5]

The parties we refer to collectively as "Graham Media" are undisputedly media defendants, and we have already determined that their publications communicated matters of public concern. When a plaintiff sues a media defendant over statements on matters of public concern, the elements of defamation are (1) the

---

[5]     Baumgart did not include a challenge to the trial court's finding that he failed to satisfy his TCPA burden in his list of issues presented. However, he argued that he presented sufficient evidence of defamation in the body of his brief, and Graham Media responded in its brief. Given our obligation to construe the briefing rules liberally, we will consider Baumgart's evidence. *See* TEX. R. APP. P. 38.9; *see also* TEX. R. APP. P. 38.1; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989) ("[I]t is our practice to construe liberally points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants.").

publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) was made with the requisite degree of fault, and (4) damages, in some cases. *Hall*, 2019 WL 2063576, at *5; *Lipsky*, 460 S.W.3d at 593. "In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss." *Lipsky*, 460 S.W.3d at 591.

Here, the evidence of falsity and defamatory content is lacking. Baumgart had the burden of establishing by clear and specific evidence a prima facie case that Graham Media's publications were false. *See D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) ("Because of the importance of cultivating and protecting freedom of expression, the plaintiff bears the burden of proving falsity if the alleged defamatory statements were made by a media defendant over a matter of public concern."). To not be false, "[a] statement need not be perfectly true[ ] as long as it is substantially true." *Toledo*, 492 S.W.3d at 714 (citing *Neely v. Wilson*, 418 S.W.3d 52, 63–64 (Tex. 2013)). Substantial truth may be measured by whether the article, taken as a whole, is more damaging to Baumgart's reputation than a truthful report would have been. *Toledo*, 492 S.W.3d at 714. In making this determination, we do not compare the gist of the article to the actual facts; instead, we must determine whether the article is a "fair, true, and impartial

13

account of the proceedings" reported. *See id.* at 715. Whether a publication is not substantially true depends on a "reasonable person's perception of the entirety of a publication and not merely on individual statements." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000).

Baumgart does not argue on appeal that Graham Media falsely stated that he was guilty of murder or other criminal misconduct related to Greenwood's death. Neither does he argue that the individual statements published by Graham Media are not substantially true. Rather, he argues that Graham Media implied his guilt. "[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Id.* at 115; *see Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 627 (Tex. 2018) (explaining that, in defamation-by-implication case, defamatory meaning arises implicitly from statement's text). So even if a publication "gets the details right but fails to put them in the proper context and thereby gets the story's 'gist' wrong," it may be liable for defamation. *Turner*, 38 S.W.3d at 115 (internal citation omitted).

The Texas Supreme Court's opinion in *Rosenthal* is instructive here. In *Rosenthal*, the Court recognized that true statements strung together and accompanied by speculative commentary might wrongly imply that the subject of a

14

publication has committed a crime. *See Rosenthal*, 529 S.W.3d at 431–32. The case concerned an article, "The Park Cities Welfare Queen," that described a woman living in a wealthy neighborhood but receiving food stamps. *Id.* When the woman sued the article's publisher, D Magazine, for defamation, the magazine argued that each of its statements was literally true and that its article never expressly accused the woman of lying or committed fraud. *Id.* at 438. This argument was correct as far as it went, but the article also speculated that the plaintiff "must have been less than forthcoming" to welfare authorities. *Id.* at 437. And the article ran under the topic heading "CRIME." *Id.* at 438.

The Court held that the article impliedly accused the woman of obtaining welfare benefits by fraud. *Id.* at 439. The Court highlighted sections of the article that juxtaposed statements in a way that insinuated accusations. For example, the article reported that the address on file with the welfare authorities was an older address. It then used another to show her current home was worth more than $1 million and noted parenthetically that "[f]alsifying such a document is a felony." *Id.* The Court held that by combining facts in this way, with such statements about the law, in the magazine's section on crime, the article taken as a whole implied that she had committed a crime. *Id.*

15

This is not a *Rosenthal* case. We cannot find any statements in Graham Media's television broadcast or web article[6] implying that Baumgart is guilty of any crime in connection with Greenwood's murder. In *Rosenthal*, the magazine made thinly veiled accusations such as the plaintiff "must have been less than forthcoming" and juxtaposed damning facts with seemingly on-point criminal statutes. Graham Media did not take the same approach. Neither the television broadcast nor the web article included speculative commentary about Baumgart's guilt. Graham Media made what Baumgart does not dispute are substantially true statements about his history with Greenwood. In reporting on the historical conflicts between Baumgart and Greenwood, Graham Media included both men's perspectives. For example, although it reported that Greenwood believed Baumgart "was a threat to him and his family," Graham Media also reported that Baumgart feared Greenwood and believed Greenwood had waged a vendetta against him. Graham Media included Baumgart's express disavowal of any connection to Greenwood's murder and informed its audience that Baumgart was incarcerated at the time of the murder and had not been named a suspect. In sum, the television broadcast and web article were not publications that got the details right but failed "to put them in the proper context" and thereby got "the story's 'gist' wrong." *Turner*, 38 S.W.3d at 115 (internal citation omitted).

---

[6] The content of the broadcast and article are the same, and we consider them together.

16

We conclude that Baumgart's claim that the television broadcast and web article imply he murdered or was involved in the murder of Greenwood is not supported by the record. Accordingly, we hold that Baumgart did not meet his burden under the TCPA to establish by clear and specific evidence that Graham Media's reporting was not substantially true or was published in such a way that it created a substantially false and defamatory impression, and the trial court did not err in dismissing his legal action under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c) (instructing that court shall not dismiss legal action if plaintiff "establishes by clear and specific evidence a prima facie case for each essential element" of his claim).

## D. Denial of Discovery

Baumgart also contends that the trial court's denial of his request for limited discovery "unjustly denied" him access to the courts and due process under Article I, Section 13 of the Texas Constitution.[7] We disagree.

---

[7] Graham Media challenges whether Baumgart preserved the denial of discovery for appellate review. This is because the trial court did not expressly rule on Baumgart's discovery motion in its order dismissing his claims under the TCPA. Thus, for error to be preserved for our review, the trial court must have implicitly denied discovery. *See* TEX. R. APP. P. 33.1(a)(2)(A). One of our sister courts concluded that a "trial court's conclusion that [the plaintiff] failed to make a prima facie case on his dismissed claims did not necessarily dispose of his motion for limited discovery because the court could have granted limited discovery, but still dismissed the claims." *Whisenhunt v. Lippicott*, 474 S.W.3d 30, 41 (Tex. App.—Texarkana 2015, no pet.) (op. on remand). We need not decide whether we agree with our sister court because Baumgart's discovery challenge fails for other reasons, as explained.

17

Article I, Section 13 instructs that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. This is a due-process guarantee that a person bringing a well-established common-law cause of action will not arbitrarily or unreasonably be denied access to the courts. *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 783 (Tex. 2007); *Offenbach v. Stockton*, 285 S.W.3d 517, 522 (Tex. App.—Dallas 2009), *aff'd*, 336 S.W.3d 610 (Tex. 2011) (observing that "an open courts challenge is a due process complaint"). Under this provision, "the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress." *Garcia*, 893 S.W.2d at 520 (quoting *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 261 (Tex. 1994)).

Baumgart maintains that the trial court ran afoul of this guarantee by denying the limited discovery he requested. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(c) (stating that "[e]xcept as provided by Section 27.006(b), . . . all discovery in the legal action is suspended until the court has ruled on the motion to dismiss"). The TCPA allows limited discovery, if properly requested and upon a showing of good cause. *Id.* § 27.006(b). This Court, and more than one of our sister courts, has concluded that this discovery limitation does not deny access to the courts. *See Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at

18

*10 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.) (rejecting open-courts challenge to TCPA's discovery restrictions because (1) provision that stays discovery is tempered by another provision that permits discovery on showing of good cause and (2) curtailing potentially costly discovery in possibly meritless case serves TCPA's goal of keeping litigation from being used to chill exercise of protected rights); *see also Khalil*, 2017 WL 3389645, at *15–17 (same); *see also Landry's, Inc. v. Animal Legal Defense Fund*, 566 S.W.3d 41, 68 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) (same); *Abraham v. Greer*, 509 S.W.3d 609, 615–16 (Tex. App.—Amarillo 2016, pet. denied) (same). On these authorities, we reject Baumgart's contention.

We also reject Baumgart's contention that the denial of his discovery request is reversible, non-constitutional error. Baumgart argues that he requested discovery that would have buttressed his defamation claim. In his motion, Baumgart requested the depositions of Archer, Soard (the county attorney who told Archer that Greenwood had described Baumgart as a threat in an email about Baumgart's public-records request), two county attorneys who were included in the email correspondence, and "a designated witness from the information technology department" for the county. At the hearing on Graham Media's TCPA motion, Baumgart argued:

The email that they are relying on that Mr. Soard gave them is an unauthenticated email. That is one of the things that I do want to get in deposition. I want that authenticated and I want the IT department to authenticate it.

If you look at the exhibit that they produced, it appears to be cut and pasted. There's something wrong with that email and I think I'm entitled to answers on it.

Given our conclusion that Graham Media's reporting was not capable of defamatory meaning, we fail to see how the requested depositions—of Archer, the county attorneys, and a county IT professional on the information communicated to Archer about Baumgart's public-records—would have changed the result in this case. *See* TEX. R. APP. P. 44.1(a) (providing that "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless" the error "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals").

For all these reasons, we conclude that the record does not support reversal because of the denial of discovery.

## Constitutional Challenges

Baumgart raises alternative arguments that the TCPA violates the Texas Constitution. Specifically, he argues that Section 27.009(a)'s language authorizing a trial court to award reasonable attorney's fees violates the right to a jury trial guaranteed by Article V, Section 10. He also argues that the TCPA is unconstitutional (1) on its face because victims of defamatory speech "are denied

20

access to the courts and leveled with unconscionable judgments for attorney fees 'incurred' by their assailant" and (2) as applied to him because Graham Media and the trial court used the TCPA as a tool of oppression.

Baumgart, however, did not raise these constitutional challenges in the trial court,[8] and therefore they are not preserved for our review. *See Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002) (observing that litigant "must raise an open-courts challenge in the trial court" to preserve challenge for appellate review); *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) ("'[A]s a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal.'" (citations omitted)); *Wisenhunt*, 474 S.W.3d at 39 (same); *see also* TEX. R. APP. P. 33.1(a)(1).

## Conclusion

For these reasons, we conclude Graham Media met its initial burden to establish by a preponderance of the evidence that Baumgart's legal action is based on, relates to, or is in response to its exercise of the right of free speech, as defined in the TCPA. Because Baumgart failed to meet his burden to establish clear and specific evidence of a prima facie case for each essential element of his defamation

---

[8] Baumgart requested a jury trial on the issue of attorney's fees, paid the jury-trial fee, and told the trial court that he believed the reasonableness of Graham Media's attorney's fees was a fact issue for a jury, but he did not argue in the trial court that a jury trial was constitutionally required.

claim, the trial court properly dismissed Baumgart's legal action. We decline to hold that either the TCPA or any subpart at issue in this appeal is unconstitutional because those questions have not been preserved for our review. Accordingly, we overrule Baumgart's appellate issues and affirm the trial court's judgment.


Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Higley, and Landau.