

# In the Court of Criminal Appeals of Texas

No. PD-0963-19

HARRY DONALD NICHOLSON, JR.,

*Appellant*

v.

THE STATE OF TEXAS

On Appellant's Petition for Discretionary Review
From the Tenth Court of Appeals
Navarro County

YEARY, J., filed a concurring opinion.

A person commits an offense if he intentionally flees from a person **he knows** is a peace officer . . . attempting **lawfully** to arrest . . . him.

TEX. PENAL CODE § 38.04(a) (emphasis added). The Court says that this

statute does not require the accused to ***know*** that the officer's attempt to arrest him is ***lawful***. I strongly disagree.

The Court readily acknowledges the primacy of plain language in the process of construing statutes. *See* Majority Opinion at 4 ("If the plain language is clear and unambiguous, our analysis ends because the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.") (quoting *Nguyen v. State*, 359 S.W.3d 636, 642 (Tex. Crim. App. 2012)). But then, even though the language of the statute at issue in this case ***is*** both clear and unambiguous, the Court declares it to be both ambiguous and even absurd so that it may then, under this Court's precedents, declare itself to be at liberty to announce a construction of the statute that it prefers.[1]

In the process, the Court makes several other major mistakes. First, it overlooks the plain import of a 1993 amendment to the applicable statute, declaring that the amendment actually *preserves* an "exception" to the offense. But the Legislature could not have more

---

[1] This is the very opposite of a *textualist* approach to statutory interpretation. The Court says: "Thus, given that the added term, 'lawfully,' deals with the same subject matter of now-repealed Subsection (b), it is more probable that the Legislature intended for the term to provide *the same exception* to prosecution as now-repealed-Subsection (b)." Majority Opinion at 7 (emphasis added). It also says: "Construing 'lawfully' to be *the equivalent* of now-repealed Subsection (b) is also more consistent with the statute's purpose—which we doubt has changed as a result of the 1993 amendment." *Id.* at 9 (emphasis added). These statements make clear that the Court's approach is not to apply the clear and unambiguous meaning of the statutory text. Instead, it seeks to give effect to what it believes "is more probable that the Legislature intended" to say. It does so because it "doubts" that the "purpose" of the law was what the Legislature actually said. It thus reveals itself to be more concerned with what *it thinks* the Legislature was hoping to achieve than what the Legislature actually did achieve.

clearly *eliminated* the former exception in favor of adding to the culpable mental state in the definition of the offense itself. The Court then declares the plain meaning of the current iteration of the statute to lead to a result that is absurd merely because that result seems unreflective of what it perceives to be the legislative objective—which objective the Court gleans from sources wholly apart from the language of the statute itself. I cannot follow this approach.

For the reasons I explain in the ensuing pages, however, I nevertheless agree with the Court's ultimate disposition of the case. I therefore concur in the result.

## I. FIRST, WHY ARE WE REACHING THIS QUESTION?

As a preliminary matter, it is necessary to examine why the Court even reaches the issue it does today—namely, whether Section 38.04(a) also requires proof of knowledge that the arrest was *lawful*—when that issue seems to have no impact on the court of appeals' ultimate disposition of the case. The Court itself seems never to explain.

The court of appeals reversed Appellant's conviction and remanded the case for new trial. The Court today, in addressing *Appellant's* petition for discretionary review, affirms that disposition. Majority Opinion at 10–11. But the basis for the court of appeals' reversal had nothing to do with the issue that the Court actually addresses: whether Section 38.04(a) of the Texas Penal Code requires the State to prove that the accused *knew* (*i.e.*, was aware) that the peace officer's attempt to arrest him was *lawful*. TEX. PENAL CODE §§ 38.04(a), 6.03(b). Instead, the court of appeals reversed Appellant's conviction based upon the fact that the jury charge failed to instruct the jury that

it must find that Appellant *knew* (*i.e.*, was aware) that the peace officer was attempting to *arrest* him at the time he fled. *Nicholson v. State*, 594 S.W.3d 480, 482 (Tex. App.—Waco 2019). In fact, the State conceded this error on appeal. *Id*. But if the jury charge was fatally deficient in the respect addressed by the court of appeals, then the conviction must be reversed regardless of whether Appellant must *also* have been aware that the arrest was unlawful. So why does the Court find it necessary to address the latter issue in an *Appellant's* petition for discretionary review when the Appellant prevailed in the court of appeals?

The reason that the question—whether Section 38.04(a) also requires proof of knowledge that the arrest was *lawful*—is relevant is that Appellant also sought a greater form of relief than just a retrial due to jury charge error. He also contended that the evidence was *legally insufficient* to prove that he was aware that the peace officer's attempt to arrest him was *lawful*. And, even when a court of appeals finds trial error in a case—such as jury charge error—it is still obligated to address a legal sufficiency argument, since a successful claim of legal insufficiency of the evidence would result in a greater form of relief—an acquittal. *Benavidez v. State*, 323 S.W.3d 179, 182 (Tex. Crim. App. 2010).

The court of appeals resolved the legal sufficiency issue, however, without ever even authoritatively construing the knowledge-of-lawfulness aspect of the statute.[2] Instead, it simply decided that the evidence was legally sufficient to prove Appellant's knowledge of the

---

[2] *See Nicholson*, 594 S.W.3d at 482 ("[W]e need not address [Appellant's] third issue pertaining to his knowledge of the lawfulness of his arrest[.]").

lawfulness, based only on an *assumption* that such knowledge was a necessary element of the State's case. *Id.* at 488. It is this sufficiency-of-the-evidence holding (based only on an *assumption* of the statute's requirements) that Appellant challenges now, in this Court—in his second ground for discretionary review, which we granted.[3] I, too, would resolve the case on that same basis, finding the evidence to be legally sufficient to sustain Appellant's conviction.

But Appellant's first ground for review, which we also granted, is the only ground that the Court actually addresses today. There, Appellant asks us to resolve whether the statute indeed requires proof of knowledge that the arrest was lawful. But remember: The court of appeals found it unnecessary to resolve *that* issue—*and it did not do so*. *Id.* at 485−88. Nor should this Court address it today in the first instance![4]

---

[3] This Court granted discretionary review in this case on the following two grounds:

1. Whether the plain language of the evading-arrest statute requires proof of knowledge that the attempted arrest or detention is lawful.; and

2. Whether it matters in this case; whether the evidence is legally insufficient to show that Nicholson knew he was being lawfully detained.

[4] *See Ex parte Sanders*, 663 S.W.3d 197, 202 (Tex. Crim. App. 2022) ("It is . . . well-established that '[i]n our discretionary review capacity we review "decisions" of the courts of appeals.'") (quoting *Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007), which in turn quoted *Lee v. State*, 791 S.W.2d 141, 142 (Tex. Crim. App. 1990)); *see also* TEX. R. APP. P. 66.1 ("The Court of Criminal Appeals may review *a court of appeals' decision* in a criminal case on

Instead, if anything, we should only address whether the court of appeals was correct that the evidence was sufficient to prove such an element even if such proof was required. Only if we were to conclude that that the court of appeals erred in *this* respect would it become necessary for us to then address whether proof of knowledge of lawfulness is required—and even then, we should only resolve that question after first remanding the cause to the court of appeals to address and resolve the merits of that issue in the first instance, since we ordinarily review only decisions *that have already been made* by the courts of appeals. *E.g.*, *Osorio-Lopez v. State*, 663 S.W.3d 750, 757 (Tex. Crim. App. 2022) ("We decline to address these issues in the first instance, however, because this Court reviews *only* decisions of the courts of appeal unless 'the proper resolution of the remaining issue is clear . . .,' *Davison v. State*, 405 S.W.3d 682, 691–92 (Tex. Crim. App. 2013), which is not the case here.") (emphasis added).

However, because the Court today unfortunately addresses that issue—and *only* that issue—I will address it too, if only because I believe the Court resolves it *so very* incorrectly. And I believe that, in resolving the question the way it does, the Court has misapplied fundamental statutory-construction tenets. Still, and only because I agree with the court of appeals that the evidence was sufficient to prove Appellant's knowledge of the lawfulness of this arrest, I concur in the Court's disposition.

---

its own initiative under Rule 67 or on the petition of a party under Rule 68.") (emphasis added).

## II. THE STATUTE SPEAKS PLAINLY

Turning to the merits of the question of whether the statute requires proof of knowledge that the arrest was lawful, I must say that I could not find the statute any plainer. As it currently reads, Section 38.04(a) requires proof that (in relevant part): "A person . . . intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest . . . him." TEX. PENAL CODE § 38.04(a). This provision contains one obvious nature-of-conduct element: flight. That nature-of-conduct element carries its own culpable mental state: "intentionally." But flight alone hardly constitutes *criminal conduct* all on its own, even when perpetrated intentionally. Thus, the true crux of the statute is only fully revealed in the context of *all* of its accompanying circumstances, which take up the remainder of the statute: that the flight is "from a person [who] is a peace officer . . . attempting lawfully to arrest . . . him."

When a criminal offense essentially turns, as this one does, on the circumstances under which conduct occurs, it becomes imperative to assign a culpable mental state to at least *some* of those circumstances[5]—either knowledge, recklessness, or negligence (since "intent" does not

---

[5] *See McQueen v. State*, 781 S.W.2d 600, 604 (Tex. Crim. App. 1989) ("[S]ome form of culpability must apply to those 'conduct elements' which make the overall conduct criminal."); *State v. Ross*, 573 S.W.3d 817, 824 (Tex. Crim. App. 2019) (endorsing and applying *McQueen*'s observation that, "where otherwise innocent conduct becomes criminal because of the circumstances under which it is done, a culpable mental state is required as to those surrounding circumstances" (quoting *McQueen*, 781 S.W.2d at 603)).

typically apply to circumstances that surround conduct).[6] TEX. PENAL CODE § 6.02(b). Here, the statute itself assigns the mental state of "knowing": it says "he knows"—that is to say, he must be "aware"—"that the circumstances exist." TEX. PENAL CODE §§ 38.04(a), 6.03(b). The question thus devolves into this: How far down the statutory description of the circumstances surrounding the flight does the assigned culpable mental state of knowledge run?[7] In my view, Section 38.04(a) plainly answers that question: The culpable mental state runs all the way to the end of the sentence.

This is true, not only, as the Court acknowledges, because there is no punctuation to suggest otherwise. Majority Opinion at 6.[8] Apart from, and in addition to, the lack of qualifying punctuation, this is simply the way that modifiers work. It is beyond cavil that the actor must "know" that the person from whom he is fleeing "is a peace officer[.]" Otherwise, "knowing" would have no application at all. The phrase "attempting to arrest[,]" in turn, modifies "peace officer": It is

---

[6] *See Robinson v. State*, 466 S.W.3d 166 (Tex. Crim. App. 2015) (observing that "the statutory definition of 'intent' [in Section 6.03(a) of the Penal Code] contains no provision for circumstances surrounding conduct, unlike the definitions [in Sections 6.03(b) and (c)] of knowledge and recklessness").

[7] *See Robinson*, 466 S.W.3d at 171 (referring to "the common issue of deciphering a statute's language to answer the question of how far down the sentence the stated culpable mental state runs"); *Ross*, 573 S.W.3d at 824 (same).

[8] The Court concedes that "[o]ne reading of the statute suggests that the word 'knows' distributes evenly to the entire subordinate remainder of the sentence. Supportive of this reading is the fact that there is no punctuation— commas, parenthesis, or other grammatical tools." Majority Opinion at 6.

conduct that the peace officer must be undertaking at the time of the flight for an offense to occur. And indeed, the Court has already decided that the accused must also know that the peace officer is "attempting . . . to arrest him" to be culpable under the statute. *See Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986) (finding this to be the only reading of the pre-1993 amendment that is "consistent with the grammatical structure of the statute").

The word "lawfully," in turn, appears within, and directly modifies, the phrase "attempting . . . to arrest[.]"[9] In fact, it is found embedded exactly between the words "attempting" and "arrest." There is nothing in the structure of the sentence to suggest that this imbedded sub-modifier of the modifier of "peace officer" should not also be included as an essential part of what the actor must "know" about the circumstances surrounding his conduct before he may be liable for an offense under the statute.

Are we to believe that the knowledge requirement imposes itself both upon the words "attempting" and "arrest" but not on the word that appears exactly in between them? No, *that* is what I believe would be absurd! *There is no textual ambiguity*! Indeed, the Court today does not

---

[9] It could not be any plainer that the adverb "lawfully" directly modifies the entire phrase within which it falls: "attempting . . . to arrest." And since "attempting . . . to arrest" plainly describes what the "peace officer" must be doing—so plainly that we said in *Jackson* that the only permissible construction of the statute was to require knowledge of that circumstance— then the only way to read "lawfully," which categorically modifies "attempting to arrest," is as an inextricable aspect of the circumstances surrounding conduct of which the actor must be "aware" before he may be found guilty under the statute. It is an integral part of the entire adjectival phrase that modifies the noun "peace officer": "attempting lawfully to arrest" the actor.

really suggest otherwise.

The Court nevertheless declares the statute to be ambiguous in this regard, but only because "a number of" courts of appeals have balked at *the consequences* of this plain reading of the statute. Majority Opinion at 6, 6 n.16 (although identifying only one such court of appeals opinion).[10] Perhaps the Court also has determined—all on its own—that the statute is ambiguous. But the Court fails to demonstrate any ambiguity at all that arises from the *text*.

### III.  RESOLVING THE (NON-EXISTENT) AMBIGUITY

The Court begins its extratextual analysis, in light of the alleged ambiguity it perceives in the text, with a look at the history of the statute "for further indicators of legislative intent." Majority Opinion at 7.[11] The only aspect of the statute's history that the Court finds

---

[10] For its part, the court of appeals identified a number of other court of appeals opinions that have declined to hold that the State must prove that an accused knew the peace officer's attempt to arrest him was lawful. *Nicholson*, 594 S.W.3d at 484−85. But, as the court of appeals also observed, each of those opinions relied upon precedents from this Court that preceded the 1993 amendment to Section 38.04, which added the requirement that the peace officer's attempt to arrest be "lawful" as an element of the offense. *Id.*; Acts 1993, 73rd Leg., ch. 900, § 1.01, p. 3667, eff. Sept. 1, 1994. None of the opinions addressed the fact that the 1993 amendment added the word "lawfully" to Section 38.04(a) as an element of the offense, much less entertained an argument whether the plain language of the provision, as so amended, now requires proof that the accused knew the peace officer's attempted arrest was lawful. *Id.* at 484.

[11] Of course, to the extent that a statute's history provides context for construing its text, we can consult it regardless of whether the statutory text is ambiguous. *See Ex parte Moon*, 667 S.W.3d 796, 803 (Tex. Crim. App. 2023):

> The starting point for determining statutory meaning is to examine both the literal text of the statute and its context; and part of the statutory context includes the history of the statute

significant is the 1993 amendment to Section 38.04. This amendment deleted the former Subsection (b) of the statute, which had made the fact that the attempted arrest was "unlawful" an explicit exception to the offense. As an exception, the fact that the arrest was *not unlawful* was required, under former Subsection (b), to be pled and proven by the State beyond a reasonable doubt. TEX. PENAL CODE § 2.02(b). In place of this explicit exception, the Legislature amended Section 38.04(a) to add the word "lawfully" among the elements of the offense itself. Acts 1993, 73rd Leg., ch. 900, § 1.01, p. 3667, eff. Sept. 1, 1994.

Now the Court says that this amendment was nothing more than a bit of legislative housekeeping; that it was not *meant* to change the statutory status quo. The Court goes so far as to declare it "probable that the Legislature *intended* for the term ["lawfully"] to provide the same exception to prosecution as now-repealed-subsection (b)." Majority Opinion at 7 (emphasis added). In fact, it is not remotely possible, not to mention "probable," that by deleting the express exception in former

---

in question. *Timmins v. State*, 601 S.W.3d 345, 348, 354 & n.50 (Tex. Crim. App. 2020) (citing Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 256 (2012) ("defining 'statutory history' as 'the statutes repealed or amended by the statute under consideration' and explaining that statutory history 'form[s] part of the context of [a] statute'")).

In any event, as I have said before, we should never be consulting extratextual content for evidence of untethered legislative *intent*; we should simply be striving to find the most accurate construction of the text itself. *See Ex parte Kibler*, 664 S.W.3d 220, 233−34 (Tex. Crim. App. 2022) (Yeary, J., concurring) ("We should not be seeking to effectuate anyone's intent or purpose unless that simply means construing and giving meaning to the words that are the literal text of the statute in question. * * * We should stop saying that our purpose is to effectuate legislative intent.") (internal quotation marks omitted).

Section 38.04(b), the Legislature effectuated "only a stylistic or non-substantive change." *Id*. No, quite the contrary.

Section 2.02(a) of the Penal Code provides: "An exception to an offense in this code is so labeled by the phrase: 'It is an exception to the application of . . . .'" TEX. PENAL CODE § 2.02(a). Given *this* plain language, it cannot reasonably be said that by *removing* the explicit language meant to delineate an exception under Section 38.04, the manifest legislative purpose was somehow to *preserve* that same exception. This anomaly is all the more glaring considering what this Court has observed regarding the dictates of Section 2.02(a).

In *Baumgart v. State*, 512 S.W.3d 335 (Tex. Crim. App. 2017), the Court said the following in discussing the requirement of the use of the phrase, "It is an exception to the application of . . .":

> [T]here are times when the legislature has mandated strict compliance with a statutory provision. This is one of those times. In saying that an exception is "labeled" with a particular phrase, and in placing that particular phrase in quotation marks, the legislature has decreed that an exception exists *only* when that exact phrase is used. Even the ellipsis within the quoted phrase contributes to the idea that, though the content of exceptions may vary, they are always introduced with the same phrase.

*Id*. at 344 (emphasis added). In view of this observation, it cannot reasonably be thought that by *deleting* "that exact phrase" from Section 38.04 altogether, the Legislature can be said to have nevertheless maintained the exception within the statute.

Instead, the Legislature, explicitly, made it an element of the offense that the peace officer's attempt to arrest the actor must be a "lawful" one. That is no mere "stylistic" or "non-substantive" change. The

only remaining question is whether the statute, as substantively amended, also requires the State to prove that the actor is *aware* that the attempted arrest is lawful. For the reasons already developed *ante*, I believe that Section 38.04(a) of the statute—as it currently reads—plainly does. And to the extent that the 1993 amendment eliminated the unlawfulness exception from the statute, it does not affect that conclusion—at all. The Court errs to think otherwise.

## IV. THE STATUTE'S PLAIN MEANING IS NOT ABSURD

The Court also declares that to adopt what I take to be the plain meaning "leads to absurd results." Majority Opinion at 8. The Court says the question of the lawfulness of the arrest is "more appropriately handled by a trial court[.]" *Id.* at 9. Better to continue to treat the issue of lawfulness as an exception, notwithstanding the 1993 amendment, the Court apparently believes. *Id.* But there are several problems with this approach.

First and foremost, it is a distortion of the "absurdity" exception to the primacy of plain meaning in statutory construction. That the Court can think of an interpretation of the statute that would be more "appropriate" does not grant the Court leave to ignore plain meaning. "The oddity or anomaly of certain consequences may be a perfectly valid reason for choosing one textually permissible interpretation over another," the late Justice Scalia and Professor Garner have observed, but in the face of statutory text the consequences of which are plain, "it is no basis for disregarding or changing the text." Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 237 (2012). Applying the absurdity exception to distort plain meaning, as the

Court does today, runs counter to the principle that "[t]he doctrine does not include substantive errors arising from a drafter's failure to appreciate the effect of certain provisions." *Id.* at 238. Otherwise, the absurdity exception lends itself to "the charge that it is an application not of textualism but of purposivism—seeking to give the text not the meaning that it objectively conveys but the meaning that was in the mind of the drafter." *Id.*

I have elsewhere registered my profound disapproval of this "effectuate-the-legislative-intent" brand of statutory construction. *Ex parte Kibler*, 664 S.W.3d 220, 233−34 (Tex. Crim. App. 2022) (Yeary, J., concurring). Instead, I agree with the assertion that the absurdity exception to the rule that plain meaning should prevail should never be relied upon "to revise purposeful dispositions that, in light of other provisions of the applicable code, make little if any sense." Scalia & Garner, at 239. But that is what the Court does today.

In any event, the Court today also *greatly* exaggerates the anomaly of forcing the State to prove that the accused was aware of the lawfulness of the peace officer's attempt to arrest him.[12] Under the

---

[12] The Court at one point says that "whether an arrest or detention is lawful or unlawful has resulted in casebooks of technical and fact-intensive jurisprudence." Majority Opinion at 9. In at least one other context of which I am aware, however, this Court has not thought it absurd to require the State even to show that a defendant knew that his own conduct facilitated *criminality*. *See Delay v. State*, 465 S.W.3d 232, 246−47 (Tex. Crim. App. 2014) ("We think the Legislature must surely have intended that, to commit or conspire to commit money laundering, the actor must be aware of the fact that the transaction involves the proceeds of criminal activity. Otherwise, the statute would attach a *mens rea* to nothing more than conduct—conducting, supervising, or facilitating a transaction—that is not intrinsically blameworthy."). Surely it is the case that whether conduct necessarily includes *criminality* has also "resulted in casebooks of technical and fact intensive

former exception embodied in Section 38.04(b) prior to the 1993 amendment, the State was already required to negate, both in pleading and in proof, "that the attempted arrest is unlawful[.]" *See* former TEX. PENAL CODE § 38.04(b) prior to amendment by Acts 1993, 73rd Leg., ch. 900, § 1.01, p. 3667, eff. Sept. 1, 1994; TEX. PENAL CODE § 2.02(b).[13] Proof in accordance with this former requirement would no doubt often involve the development of the circumstances of the arrest itself. Those circumstances will at least more often than not, I believe, serve just as well to establish the answer to whether the accused was aware that the peace officer's attempt to arrest him was patently lawful. Indeed, the facts of this case provide a ready example.

## V. THE EVIDENCE IS LEGALLY SUFFICIENT TO PROVE KNOWLEDGE

By the time the police officer in this case attempted to arrest Appellant, he (Appellant) had committed several offenses within the officer's presence, including littering and failure to present a valid driver's license upon request. *Nicholson*, 594 S.W.3d at 487. Moreover, Appellant had "active felony warrants" out for his arrest. *Id.* Even before he attempted to flee the scene, Appellant's conduct showed a will to resist the officer's efforts to question him and detain him at the scene until backup units could arrive. *Id.* at 487–88. From these facts a jury

---

jurisprudence." So, I do not understand why the Court finds it absurd today, in this circumstance, that the statute should plainly require the State to show that a defendant knew that an officer's attempt to arrest him was *lawful*.

[13] Section 2.02(b) provides: "The prosecuting attorney must negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception."

might rationally—indeed, even readily—have inferred not just that the attempted arrest was lawful, but that Appellant was aware that he was subject to lawful arrest. I agree with the court of appeals' conclusion that the evidence was legally sufficient to establish this fact to a level of confidence beyond a reasonable doubt.[14]

That being the case, then, of course it does not matter whether Section 38.04(a) requires proof of that fact; Appellant was not entitled to an acquittal even if it does. And the court of appeals did not err to decline to ultimately resolve that question, since it could finally dispose of the legal sufficiency issue without doing so. On this basis, I would reject Appellant's second ground for review, and I would accordingly dismiss Appellant's first ground for review as moot.

## VI. CONCLUSION

The Court ultimately disposes of the case today by affirming the court of appeals' uncontested reversal based on jury charge error— namely, the failure of the charge to require the jury to find Appellant was aware that the officer *was attempting to arrest him* at the time of the offense. Majority Opinion at 11. With this much, I agree. But the Court then remands the case to the trial court for a new trial based upon this manifest trial error that the Court never even addresses on the

---

[14] Chief Justice Gray filed a dissenting opinion in which he argued that Section 38.04(a) does indeed require proof that Appellant was aware that the officer's attempt to arrest him was lawful. *Nicholson*, 594 S.W.3d at 492. But he believed the evidence was insufficient to prove this element of the offense, and he would have acquitted Appellant on that basis. *Id.* Interestingly, he neither explained in what way he thought the evidence was lacking in that regard, nor did he even attempt to explicitly refute the majority's contrary conclusion.

merits in its opinion.[15]

It is also a mystery to me exactly why the Court even takes up the question of whether the trial court's charge to the jury should also have instructed the jury that it must find Appellant was aware that the attempted arrest was also *lawful* as a predicate to conviction, unless the Court simply desires to inform the lower court of its views on that issue.[16] The court of appeals did not find it necessary to resolve that issue. And its failure to do so cannot have been an error so long as it was correct to hold that the evidence was legally sufficient, in any event, to prove that fact—an issue the Court today never even acknowledges, much less addresses.

In my view, it is appropriate for this Court to affirm the judgment of the court of appeals remanding for trial error. I believe that is the case because I agree with the court of appeals that the evidence would prove knowledge of the lawfulness of the attempted arrest, even assuming (without deciding) that proof of that fact is necessary under a plain reading of Section 38.04(a). Acquittal is not called for, but reversal for trial error, which the court of appeals has already done, is. I therefore concur in the result the Court announces today. But I cannot join its opinion.

---

[15] Of course, this Court, at least in its capacity as a discretionary review court, should not purport to remand the case for a new trial. By affirming the judgment of the court of appeals, we leave standing *that* court's disposition, which is where the order to remand occurred. We need not and should not order the remand ourselves.

[16] But this is anomalous since Texas courts are not empowered to give advisory opinions. *Petetan v. State*, 622 S.W.3d 321, 334 (Tex. Crim. App. 2021) ("Texas courts are not empowered to give advisory opinions").

**FILED:**                                          January 17, 2024
**PUBLISH**